IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| VIRBAC CORPORATION<br>3200 Meacham Boulevard<br>Ft. Worth, TX 76137<br><br>Plaintiff,<br><br>v.<br><br>CHANELLE PHARMACEUTICALS<br>MANUFACTURING LTD.<br>Athenry Road, Loughrea<br>Co. Galway, Ireland<br><br>and<br><br>HARTZ MOUNTAIN CORPORATION<br>400 Plaza Dr.<br>Secaucus, New Jersey 07094-3688<br><br>and<br><br>MICHAEL BURKE<br>Barrack Street, Loughrea<br>Co. Galway, Ireland<br><br>and<br><br>VINAY TRIPATHI,<br>Athenry Road, Loughrea<br>Co. Galway, Ireland<br><br>and<br><br>ALBERT AHN<br>43 Talbot Court<br>Short Hills, New Jersey 07078<br><br>and<br><br>IAN COTTRELL<br>10 Spencer Road<br>Basking Ridge, New Jersey 07920<br><br>Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | Civil Action No. _____<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>JURY DEMANDED |

**PLAINTIFF VIRBAC CORPORATION'S ORIGINAL COMPLAINT**

Plaintiff Virbac Corporation, (hereinafter "Virbac" or "Plaintiff"), files its Original Complaint against Chanelle Pharmaceuticals Manufacturing Ltd., Hartz Mountain Corporation, Michael Burke, Vinay Tripathi, Albert Ahn, and Ian Cottrell, (collectively "Defendants"), and would respectfully show the Court as follows:

## I.    PARTIES

1.    Plaintiff Virbac Corporation is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 3200 Meacham Boulevard, Ft. Worth, TX 76137.

2.    Defendant Chanelle Pharmaceuticals Manufacturing Ltd. ("Chanelle") is a corporation organized and existing under the laws of the Country of Ireland.  Its principal place of business is at Athenry Road, Loughrea, Co. Galway, Ireland.  Chanelle will be served with process in accordance with the Hague Convention.

3.    Defendant Hartz Mountain Corporation ("Hartz"), is a corporation organized and existing under the laws of the State of New Jersey, having its principal place of business at 400 Plaza Dr., Secaucus, New Jersey 07094-3688, and can be served with this complaint through its registered agent for service, CT Corporation System, 350 North St. Paul Street, Dallas, Texas 75201.

4.    Defendant Michael Burke ("Burke") is a resident of Loughrea, Ireland who may be served residing at Barrack Street, Loughrea, Co. Galway, Ireland or wherever he may be found.  Burke will be served with process in accordance with the Hague Convention.

5.    Defendant Vinay Tripathi ("Tripathi") is a resident of Loughrea, Ireland and may be served at Athenry Road, Loughrea, Co. Galway, Ireland or wherever he may be found.  Tripathi will be served with process in accordance with the Hague Convention.

6.      Defendant Albert Ahn ("Ahn") is a resident of Short Hills, New Jersey and can be served with process at 43 Talbot Court, Short Hills, New Jersey 07078 or wherever he may be found.

7.      Defendant Ian Cottrell ("Cottrell") is a resident of Basking Ridge, New Jersey and can be served with process at 10 Spencer Road, Basking Ridge, New Jersey 07920 or wherever he may be found.

## II.     JURISDICTION AND VENUE

8.      Jurisdiction is proper in the United States District Court for the District of Columbia pursuant to the provisions of 28 U.S.C. §1332 in that this matter is a civil action between citizens of different states and in which citizens or subjects of a foreign state are additional parties wherein the amount of controversy exceeds the sum of $75,000, exclusive of interest and costs.

9.      This Court also has original jurisdiction over this action pursuant to the provisions of 28 U.S.C. §1331 and §1338 in that this matter is a civil action arising under the Constitution, laws, or treaties of the United States.  This action involves violations of Section 43 of the Lanham Act, 15 U.S.C. §1125, and arises under the Patent Laws of the United States.  This action also includes Texas common law claims.  This Court has supplemental or pendant jurisdiction over the Texas common law claims under 28 U.S.C. §1367(a).

10.     Defendants have caused tortious injury in the District of Columbia by acts and omissions in the District of Columbia, have transacted business in the District of Columbia and have sufficient contacts with the District of Columbia to constitute minimum contacts for purposes of personal jurisdiction.

11.     Specifically, Defendants have availed themselves of the benefits and protections afforded by the United States Patent and Trademark Office by filing certain patent applications,

assignment documents and other patent application related documents, which are the subject of this lawsuit and by making certain misrepresentations to the United States Patent and Trademark Office.

12.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, or a substantial part of the property that is the subject of the action is situated in this judicial district. Defendants have committed violations of the Lanham Act, engaged in unfair competition and made misrepresentations to the United States Patent and Trademark Office within this judicial district.

### III.     CASE SUMMARY

13.     Virbac's claims arise from Defendants': (i) misuse and theft of Virbac's trade secrets; (ii) attempts to compete unfairly; (iii) fraud; (iv) breach of certain confidentiality agreements; (v) tortious interference with contract; (vi) tortious interference with business relations and economic advantage; (vii) conversion; (viii) unjust enrichment; and (ix) conspiracy. In particular, Defendants conspired to use, sell and distribute Virbac's trade secrets to the detriment of Virbac and unjustly enriched Defendants.  In addition, Defendants committed fraud on the United States Patent and Trademark Office ("USPTO") by intentionally misrepresenting that they invented and owned the trade secrets that are the subject matter of this lawsuit in U.S. Patent Applications filed with the USPTO and International Patent Applications filed with the World Intellectual Property Organization ("WIPO").

### IV.     FACTUAL BACKGROUND

14.     This case concerns Virbac's acquisition and development of certain liver-flavored products used for the treatment and prevention of heartworms, roundworms, hookworms or tapeworms in dogs (hereinafter as used individually "Products," and collectively "Product

Lines"), which include Virbac's "2G" and "3G" liver-flavored products.  This case also involves the processes, recipes, ingredients and know-how associated with the Products and Product Lines (the "Know-How" and/or "Trade Secrets").

15.     On December 22, 1999, Virbac entered into a contract with Blue Ridge Pharmaceuticals, Inc. ("Blue Ridge"), a North Carolina corporation, and IDEXX Laboratories, Inc. ("IDEXX"), a Delaware corporation, for the exclusive right to make, have made, market and sell the Products and the Product Lines.  *See* a true and correct copy of the Development and Distribution Agreement ("Development Agreement"), which is attached hereto as Exhibit "A" and incorporated herein for all purposes.  Under the express terms of the Development Agreement, Virbac obtained the exclusive right to "make, have made, market and sell" the Products and Product Lines for the treatment and prevention of canine heartworms, roundworms, hookworms, and tapeworms.  In exchange for the payment of millions of dollars, Virbac acquired the exclusive right to manufacture, have manufactured, market and sell the Products and Product Lines.  Further, Virbac acquired the "exclusive" right and use of the Know-How and/or Trade Secrets as part of the Development Agreement.

16.     The parties acknowledged the value and sensitivity of the Products, Product Lines, Know-How and/or Trade Secrets, when they agreed not to disclose any proprietary information related to the Products or Product Lines to "any person or entity."  *See* Ex. A at Paragraph 10.  Further, the parties agreed not to develop, manufacture, market or sell "Competitive Products" or assist any third party in the same.  *See* Ex. A at Paragraph 12.

17.     On December 13, 2001, Blue Ridge and Virbac also entered into a Product Transfer Agreement ("PTA") and transferred the described rights of Blue Ridge in the Products and Product Lines to Virbac.  *See* a true and correct copy of the PTA, which is attached hereto as Exhibit "B" and incorporated herein for all purposes.  Under the express terms of the PTA, Blue

Ridge represented and warranted that it had "not disclosed any proprietary information relating to the Products … to any person or entity…." Ex. B at Paragraph 6, section viii. IDEXX unconditionally guaranteed the performance of Blue Ridge's obligations under the PTA.

18.     Prior to the execution of the PTA, IDEXX and Blue Ridge requested permission from Virbac to disclose the "terms" of the Development Agreement to Chanelle. *See* a true and correct copy of Letter dated September 11, 2001, which is attached hereto as Exhibit "C" and incorporated herein for all purposes. Virbac agreed only to the disclosure of the Development Agreement's terms and did not consent to the release of any proprietary or confidential information, including the Know-How and/or Trade Secrets that Virbac paid millions of dollars for the right to possess.

19.     The Know-How and/or Trade Secrets associated with the Products and Product Lines has allowed Virbac to enjoy a competitive advantage over other competing veterinary medicine pharmaceutical manufacturers. In addition to the chemical composition of each of the Products and the Product Lines, the method of manufacture, and the time required to develop manufacturing efficiencies gives Virbac a distinct competitive advantage over competitors. Virbac maintained and has continued to maintain the confidential nature of the Know-How and/or the Trade Secrets associated with the Products and the Product Lines. In fact, subsequent to the execution of the Development Agreement and the PTA, Virbac invested substantial sums of money, time and effort in further developing and refining its manufacturing techniques and methods in preparation for the sale of the Products and the Product Lines.

20.     Blue Ridge and IDEXX disclosed the Know-How and/or Trade Secrets associated with the Products and Product Lines to Defendants Chanelle and Hartz without obtaining permission from Virbac. Thereafter, without the knowledge or permission of Virbac, Defendants Burke, Tripathi, Ahn, and Cottrell (the "Individual Defendants"), each of whom was an

employee of Chanelle or Hartz, swore under oath that they were inventors of the Products and Product Lines when they filed U.S. Patent Application Serial No. 10/637,807 and U.S. Patent Application Serial No. 10/800,407 ("U.S. Applications") on or about August 8, 2003. The U.S. Applications were published on or about February 10, 2005 as U.S. Patent Application Publication No. US2005/0032718 and U.S. Patent Application Publication No. US2005/0032719. Defendants Chanelle and Hartz were the assignees of record in the U.S. Applications.

21.    Defendants also filed International Patent Applications with the WIPO under the provisions of the Patent Cooperation Treaty with international application serial number PCT/US2004/025006 and PCT/US2004/025006 ("PCT Applications") on or about August 3, 2004. Defendants Chanelle and Hartz were also listed as the assignees of record on the PCT Applications. The PCT Applications were published on or about February 24, 2005 as WO2005/016358 and WO2005/016356.

22.    Virbac has recently discovered that its confidential and proprietary information, which included the Know-How and/or Trade Secrets associated with the Products and the Product Lines was disclosed by Defendants in the U.S. Applications and the PCT Applications and, therefore, placed in the public domain upon publication. Moreover, Virbac also learned that the Individual Defendants misrepresented that they were inventors of the Products and Product Lines and that Defendants Chanelle and Hartz misrepresented that they were the owners of the U.S. Applications and the PCT Applications.

23.    Virbac has also recently learned that disclosures of additional proprietary information underlying its agreements with Blue Ridge and IDEXX were made under separate agreements between Blue Ridge and Defendants Chanelle and Hartz. This disclosure was also made without the permission of Virbac.

24.    The patent examiner at the USPTO has issued an "office action" rejecting the claims in the U.S. Applications, and has issued a "final office action" again rejecting the claims in the U.S. Applications if the U.S. Applications are not placed in condition for allowance.  If the U.S. Applications are not placed in condition for allowance, and another application that claims priority to the U.S. Applications is not filed by the due date for responding to the "final office action," the U.S. Applications will go abandoned, and the right to prevent any competitors from making, manufacturing, using, selling, or offering for sale the subject matter disclosed in the U.S. Applications will expire.

25.    Accordingly, Defendants' actions have already irreparably damaged Virbac by exposing the Know-How and/or Trade Secrets that are associated with the Products and Product Lines.

26.    Indeed, Defendants' actions have forced Virbac to attempt to protect what value the Products and Product Lines may have left through the patenting process, which will only protect Virbac's Know-How and/or Trade Secrets for a finite amount of time.  Virbac no longer has the option to protect its valuable Know-How and/or Trade Secrets in a conventional manner. Defendants have also further compounded this problem and exposed Virbac to additional irreparable and immediate harm by committing fraud on the USPTO and WIPO and by failing to properly prosecute the U.S. Applications and the PCT Applications.  Accordingly, if this Court does not enjoin Defendants from their continued wrongful activity and assign the U.S. Applications and the PCT Applications to Virbac (so that they can be prosecuted properly), it is likely that the value of the 2G and the 3G Products and Product Lines will be completely destroyed.

## V.    CAUSES OF ACTION

27.    All conditions precedent to Plaintiff's claims have been performed or will be performed.

### Count I
### Violation of the Lanham Act Through Unfair Competition of the Theft of Trade Secrets

28.    As detailed above, a trade secret existed in the Know-How and/or Trade Secrets associated with the Products and the Product Lines.    Defendants Chanelle and Hartz misappropriated and exposed Virbac's Know-How and/or Trade Secrets.    The Individual Defendants compounded this exposure by misrepresenting that they were inventors of the Products and the Product Lines to the USPTO and the WIPO.    Further, Defendants Chanelle and Hartz misrepresented that they were the owners of the U.S. Applications and the PCT Applications and the subject matter found therein.    Defendants' actions in this regard constitute a violation of Section 43 of the Lanham Act, 15 U.S.C. §1125.

29.    The Individual Defendants have made false and misleading statements as to the creation or ownership of the subject matter of the U.S. Applications and the PCT Applications, which discloses the confidential and proprietary information owned by Virbac including the Know-How and/or Trade Secrets associated with the Products and the Product Lines.    Such misrepresentations have created confusion in the public.    This deception or confusion is material, and is likely to influence investment or purchasing decisions of prospective customers, distributors, licensees, and investors. The misrepresentations affect or likely will affect commerce and have created a substantial likelihood of immediate and irreparable injury to Virbac.    There has also been a substantial, but incalculable loss to the value of Virbac's confidential and proprietary information (including the Know-How and the Trade Secrets), including a loss of goodwill, time, effort and money spent to develop and acquire the Products

and Product Lines.  There is an actual effect on commerce because the U.S. Applications and the PCT Applications have created a cloud on Virbac's Know-How and/or Trade Secrets, thereby discouraging prospective customers, distributors, licensees, and investors in the licensing and commercialization of the Products and the Product Lines.

30.    Moreover, the unauthorized filing and publications of the U.S. Applications and the PCT Applications were activities in commerce that have destroyed Virbac's confidential and proprietary information by disclosing the Know-How and/or Trade Secrets associated with the Products and the Product Lines to Virbac's competitors.  The injury to the value of Virbac's intellectual property, because of the U.S. Applications and the PCT Applications, amount to an effect upon interstate commerce.

31.    Virbac has no adequate remedy at law for Defendants' unfair competition and deceptive trade practices under the Lanham Act and initially seeks an order from this Court placing the U.S. Applications and the PCT Applications in a constructive trust so that Virbac can properly prosecute and maintain the U.S. Applications and the PCT Applications without them being dedicated to the public due to abandonment.  Virbac also seeks an injunction compelling Defendants Chanelle and Hartz to assign and transfer all alleged ownership rights in the U.S. Applications and the PCT Applications to Virbac and enjoining Defendants from manufacturing, distributing or selling the Products and Product Lines.  Virbac further seeks a preliminary injunction and permanent injunction preventing Defendants from representing that they are the inventors and/or owners of the U.S. Applications and the PCT Applications and from using or further disclosing any of Virbac's confidential and proprietary information, including but not limited to the Know-How and/or Trade Secrets associated with the Products and Product Lines.

32.    Additionally, Virbac also seeks to recover all monetary damages caused by Defendants' violations of the Lanham Act.  However, as described above, the amount of Virbac's monetary damages is unliquidated and incapable of being calculated at this time.

33.    Defendants' actions were intentional, fraudulent, deliberate and willful. Therefore, this is an exceptional case under 15 U.S.C. §1117.

<u>**Count II**</u>
**Violation of the Lanham Act Through Unfair Competition of False Advertising**

34.    In addition to the violations of the Lanham Act set out above, Defendants Chanelle and Hartz have made false statements with respect to the ownership, development, and sale of the Products and the Product Lines that affect interstate commerce.

35.    Upon information and belief, Hartz sold some or all of its assets, including its alleged ownership rights to the U.S. Applications and the PCT Applications, to Sumitomo.  The sale of the U.S. Applications and the PCT Applications unfairly provides Sumitomo and the Defendants with the ability to attempt to prevent Virbac from making, manufacturing, using, selling or offering the Products and Product Lines for sale.  Defendants' actions have affected interstate commerce by giving Sumitomo the ability to wrongfully prevent Virbac from selling the Products and Product Lines that it expended large amounts of time, effort and money to develop.   Defendants' actions in this regard constitute a violation of Section 43 of the Lanham Act, 15 U.S.C. §1125.

36.    Virbac seeks an order from this Court placing the U.S. Applications and the PCT Applications in a constructive trust so that Virbac can properly prosecute and maintain the U.S. Applications and the PCT Applications and enjoining Defendants from manufacturing, distributing or selling the Products or the Product Lines.  Virbac also seeks an injunction ordering Defendants Chanelle and Hartz to assign and transfer all ownership rights to the U.S.

Applications and the PCT Applications to Virbac.  Virbac further seeks a preliminary injunction and permanent injunction preventing Defendants from representing that they are the inventors and/or owners of the U.S. Applications and the PCT Applications and from using or further disclosing any of Virbac's confidential and proprietary information, including but not limited to the Know-How and/or Trade Secrets associated with the Products and Product Lines.

37.    Additionally, Virbac seeks to recover all monetary damages caused by Defendants' violations of the Lanham Act.  However, as described above, the amount of Virbac's monetary damages is unliquidated and incapable of being calculated at this time.

38.    Defendants' actions were intentional, fraudulent, deliberate and willful. Therefore, this is an exceptional case under 15 U.S.C. §1117.

<u>**Count III**</u>
**Fraud on the U.S. Patent and Trademark Office**

39.    The Individual Defendants engaged in fraud on the USPTO and the WIPO by claiming under oath that they invented the subject matter of the U.S. Applications and the PCT Applications.  The sworn statements of the Individual Defendants were knowingly false because the subject matter of the U.S. Applications and the PCT Applications were disclosed in violation of their nondisclosure obligations in the Development Agreement, the PTA, and other confidentiality agreements with Defendants Chanelle and Hartz.  The USPTO and the WIPO relied on the sworn statements of Individual Defendants as evidenced by the fact that Individual Defendants have been listed as the inventors in the U.S. Applications and the PCT Applications.

40.    Defendants Chanelle and Hartz also committed fraud by claiming ownership through assignments of the U.S. Applications and the PCT Applications and by filing said assignments for recordation by the USPTO and WIPO.  Defendants Chanelle and Hartz have been unjustly enriched by the USPTO's and WIPO's reliance on the Individual Defendants'

misrepresentations as inventors of the Products and the Product Lines because the USPTO and the WIPO accepted the assignments to Defendants Chanelle and Hartz as valid. Virbac has been damaged by Defendants' fraud and will continue to be damaged as long as Virbac cannot prosecute the U.S. Applications and the PCT Applications. Defendants' actions in this regard occurred within the District of Columbia and constitute fraud on the PTO and the WIPO under federal common law.

41.    Virbac will also show that Defendants' fraud and misrepresentations were made intentionally, or alternatively, were made with reckless disregard for the actual truth of the matters asserted. Under these circumstances, Virbac should recover punitive damages from Defendants in order to prevent this kind of conduct from occurring in the future.

## Count IV
## Misappropriation of Trade Secrets

42.    The Know-How and/or Trade Secrets associated with the Products and the Product Lines are trade secrets under Texas law. As described above, Defendants Chanelle and Hartz acquired the Know-How and/or Trade Secrets, including the confidential subject matter of the Development Agreement and PTA pertaining to the Products and the Product Lines, through its course of dealings with Blue Ridge and IDEXX. Specifically, Blue Ridge and Defendants Chanelle and Hartz obtained access to the Know-How and/or Trade Secrets by executing agreements with nondisclosure and confidentiality obligations.

43.    Defendants' disclosure of Virbac's confidential information in the U.S. Applications and the PCT Applications and their misrepresentations of inventorship and ownership is a cloud over Virbac's true ownership of the Products and the Product Lines. Defendants' actions constitute misappropriation of trade secrets under Texas law and have caused Virbac's confidential information, including but not limited to the Know-How and/or Trade

Secrets, to be exposed in the public domain and left unprotected, which has allowed Virbac's competitors to gain a competitive advantage without the expenditures of time, effort and money made by Virbac. The situs of Virbac's Know-How and/or Trade Secrets is at its headquarters in Fort Worth, Texas. The harm suffered by Virbac as a result of Defendants' misappropriation of Virbac's Know-How and/or Trade Secrets was felt at its headquarters in Fort Worth, Texas and a substantial amount of Defendants' misappropriation took place in Fort Worth, Texas. Texas has a substantial interest in preserving and protecting the confidential information of its residents, like Virbac in this case. Moreover, the relationship between Virbac and the Defendants is centered in Fort Worth, Texas.

44.    Unless this Court enjoins Defendants Chanelle and Hartz from using Virbac's trade secrets and prosecuting the U.S. Applications and the PCT Applications, or alternatively from allowing the U.S. Applications and the PCT Applications to be abandoned without filing continuation patent applications in order to protect any remaining patentable rights, Virbac's business will be irreparably damaged.

45.    Defendants Chanelle and Hartz will continue to use the Know-How and/or Trade Secrets unless the Court enjoins them from doing so. Virbac has already suffered irreparable harm in that some of its competitors now have unabated access to its confidential information, including but not limited to the Know-How and/or Trade Secrets, that were published in the U.S. Applications and the PCT Applications. Virbac will suffer additional irreparable harm if the U.S. Applications are abandoned or issue without the filing of continuation applications because any disclosed but unclaimed subject matter in the U.S. Applications will be dedicated to the public, and any subsequent patent applications filed on behalf of Virbac will not have the benefit of the priority date in the U.S. Applications.

46.    Virbac has no adequate remedy at law to address the disclosure and loss of its confidential and proprietary information, therefore, it seeks a preliminary injunction and a permanent injunction: (i) preventing Defendants from allowing the U.S. Applications to issue or to be abandoned without previously filing continuation applications; (ii) ordering Defendants to transfer control of the prosecution of the U.S. Applications and the PCT Applications to Virbac; (iii) ordering Defendants to assign any interests in the U.S. Applications, any patent issuing therefrom, and any applications claiming benefit of the U.S. Applications to Virbac; and (iv) preventing Defendants from registering, manufacturing, selling or distributing the Products or Product Lines.  Virbac also seeks a preliminary injunction, and permanent injunction preventing Defendants from using or further disclosing the Know-How and/or Trade Secrets associated with the Products and the Produce Lines and from representing that they are the inventors and/or owners of the U.S. Applications and the PCT Applications.

47.    Additionally, Virbac also seeks to recover all monetary damages caused by Defendants' misappropriation of Virbac's Know-How and/or Trade Secrets.

48.    Defendants' misappropriation of Virbac's Know-How and/or Trade Secrets was intentional, willful and malicious.  Therefore, to prevent this type of conduct in the future, Virbac is entitled to recover punitive damages from Defendants.

## Count V
## Common Law Unfair Competition

49.    Defendants have committed the common law tort of unfair competition under Texas law through their attempts to acquire Virbac's prospective customers and gain a head start on other competitors through the misappropriation of Virbac's confidential and proprietary information, including but not limited to the Know-How and/or Trade Secrets associated with the Products and Product Lines.  As described above, a substantial amount of Defendants' conduct

leading to the injury suffered by Virbac occurred in Texas and the injury to Virbac was felt in Texas. Moreover, Texas has a substantial interest in protecting its residents from the type of unfair competition that is present in this case.

50.     The Know-How and/or Trade Secrets have a unique pecuniary interest derived from Virbac's time, effort and money, which gave Virbac a business advantage over its competitors. Once acquired, Defendants misrepresented that the Products and Product Lines as well as the methods and/or process of producing the Products and Product Lines were their own. In addition, Defendants failed to properly acquire the Know-How and/or Trade Secrets pertaining to the Products and the Product Lines for valid consideration, develop it, or refine it. Because of Defendants' unfair competition, Virbac has lost the ability to protect the Know-How and/or Trade Secrets associated with the Products and the Product Lines as a trade secret and has been irreparably damaged. Unless this unfair competition is enjoined, Virbac will be further irreparably damaged by losing its market advantage and possibly losing its ability to patent the Know-How and/or Trade Secrets. Therefore, Virbac requests that the Court issue a preliminary injunction as outline above and a permanent injunction to prevent the continued unfair business practices of Defendants.

51.     Additionally, Virbac seeks to recover the monetary damages caused by Defendants' unfair competition. However, as described above, Virbac's monetary damages are currently unliquidated and incapable of being calculated at this time.

## Count VI
## Conversion

52.     Defendants have converted property belonging to Virbac, which included the Know-How and/or the Trade Secrets associated with the Products and the Product Lines covered by the Development Agreement and PTA. Virbac's property was disclosed to Defendants

without authorization from Virbac, and was unlawfully converted by Defendants through the filing of the U.S. Applications and the PCT Applications that named the Individual Defendants as inventors and Defendants Chanelle and Hartz as the assignees or owners of the Products and Product Lines and the method and/or process of producing the Products and Product Lines. Defendants wrongfully and intentionally exercised dominion and control over Virbac's property inconsistent with the rights of Virbac and without just cause. Virbac is entitled to the return of its property through the assignment of the U.S. Applications and the PCT Applications, together with equitable relief and/or damages for the injury caused by Defendants.

53.    Defendants' actions constitute conversion under Texas law. Indeed, the situs of the Know-How and/or Trade Secrets is in Texas, a substantial amount of the conduct underlying Defendants' conversion occurred in Texas and the injury felt by Virbac as a result of Defendants' conversion was felt in Texas. Moreover, Texas has a substantial interest in protecting its residents from Defendants' conduct in this case.

54.    Defendants' conversion and theft of Virbac's intellectual property and their fraudulent filing of the U.S. Applications and the PCT Applications was intentional, willful and malicious. Therefore, to prevent this type of conduct in the future, Virbac is entitled to recover punitive damages from Defendants.

**Count VII**
**Unjust Enrichment**

55.    Defendants have been unjustly enriched through their actions in this case. Defendants neither purchased nor licensed any of the ownership rights in the Know-How and/or Trade Secrets associated with the Products and the Product Lines owned by Virbac, but are now claiming ownership and inventorship status over the information in the U.S. Applications and the PCT Applications. Defendants' wrongful disclosure of Virbac's confidential information

deprived Virbac of the Know-How and/or Trade Secrets and irreparably destroyed their value. Virbac is entitled to the return of its property through the assignment of the U.S. Applications and the PCT Applications and an order from the Court preventing Defendants from benefiting from the unjust enrichment they acquired by filing, and allowing to be published, the U.S. Applications and the PCT Applications, together with any other equitable relief and/or monetary damages for the injury caused by Defendants.

56.    The benefits received and enjoyed by Defendants as a result of their actions described above amounts to an unjust enrichment under Texas law.  Indeed, the situs of the Know-How and/or Trade Secrets is in Texas, a substantial amount of the conduct underlying Defendants' unjust enrichment occurred in Texas and the injury felt by Virbac as a result of Defendants' unjust enrichment was felt in Texas.  Moreover, Texas has a substantial interest in protecting its residents from Defendants' conduct in this case.

57.    Therefore, Virbac is entitled to the equitable remedy of restitution by recovering from Defendants the reasonable value of the benefits wrongfully retained by Defendants.

## Count VIII
### Tortious Interference with Contract

58.    As discussed above, the Development Agreement between Blue Ridge and Virbac gave Virbac the exclusive right to "make, have made, market and sell" the Products and Product Lines.  Virbac also acquired the "exclusive" right and use of the Know-How and/or Trade Secrets in the Development Agreement.

59.    Blue Ridge disclosed to Defendant Chanelle the terms of the Development Agreement conveying exclusive rights in the Products, Product Lines, Know-How and/or Trade Secrets to Virbac.  At all times relevant to this lawsuit, Defendant Chanelle was aware of Virbac's exclusive rights in the Products, Product Lines, Know-How and/or Trade Secrets.  Upon

information and belief, Defendant Hartz and the Individual Defendants knew about Virbac's exclusive rights in the Products, Product Lines, Know-How and/or Trade Secrets.

60.    With full knowledge of Virbac's exclusive rights in the Products, Product Lines, Know-How and/or Trade Secrets, Defendants willfully and intentionally acted to interfere with the Development Agreement and/or the PTA by: (i) using the Know-How and/or Trade Secrets; (ii) developing and making Products and items in the Product Line; (iii) seeking to appropriate exclusive rights to itself, and to exclude Virbac from the market, by filing patent applications on the Products and the Product Lines; (iv) disclosing the Know-How and/or Trade Secrets to the public through their patent application filings and disclosures; and (v) preparing to commercialize the Products and the Product Lines in illegal competition with Virbac. Defendants were not privileged to commit, or justified in committing, any of these acts. Taken singly and together, these acts were intended to, and had the effect of, destroying Virbac's ability to exercise it contractual rights and Blue Ridge's ability to fulfill its contractual obligation to convey exclusive rights in and good title to the Products, Product Lines, Know-How and/or Trade Secrets.

61.    Defendants' actions constitute tortious interference with contract under Texas law. Indeed, the situs of the Know-How and/or Trade Secrets is in Texas, a substantial amount of the Defendants' interference occurred in Texas and the injury felt by Virbac as a result of Defendants' interference was felt in Texas. Moreover, Texas has a substantial interest in protecting its residents from Defendants' interference.

62.    Each of these acts has proximately caused Virbac actual damage and loss in a substantial and unliquidated amount by depriving it of the benefit of the exclusive rights conveyed to it in the Development Agreement and/or the PTA. Defendants' intentional

interference with contract was intentional, willful and malicious.  Therefore, Virbac is entitled to recover punitive damages from Defendants.

### Count IX
### Tortious Interference with Prospective Economic Advantage
### or Prospective Business Relations

63.    As a result of the Development Agreement and/or the PTA, Virbac had a reasonable expectation that it would continue to enjoy the economic benefits of its exclusive rights in the Products, Product Lines, Know-How and/or Trade Secrets.  It reasonably anticipated that the veterinary market would find the Products and the Product Lines highly desirable, and that its exclusive rights would enable it to enter into economically advantageous contracts, agreements, and business relationships with its customers and others.

64.    With full knowledge of the reasonable probability that Virbac's exclusive rights in the Products, Product Lines, Know-How and/or Trade Secrets would enable it to enter into business relationships and contracts, Defendants willfully and intentionally acted to interfere with Virbac's entry into such relationships by:  (i) developing and making the Products and items in the Product Line; (ii) disclosing the Know-How and/or Trade Secrets to the public through their patent application filings and disclosures; (iii) seeking to appropriate exclusive rights to itself, and to exclude Virbac from the market, by filing for patent applications on the Products and the Product Lines; and (iv) preparing to commercialize the Products and items in the Product Lines in illegal competition with Virbac.  Defendants were not privileged to commit, or justified in committing, any of these acts.  Taken singly and together, these acts were intended to, and had the effect of, interfering with Virbac's ability to enter into advantageous business relations and contracts arising out of  the exclusive rights acquired in the Development Agreement and/or the PTA.

65.    Defendants' actions constitute tortious interference with prospective economic advantage and business relations under Texas law.  Indeed, the situs of the Know-How and/or Trade Secrets is in Texas, a substantial amount of the Defendants' interference occurred in Texas and the injury felt by Virbac as a result of Defendants' interference was felt in Texas.  Moreover, Texas has a substantial interest in protecting its residents from Defendants' interference.

66.    Each of these acts has proximately caused Virbac actual damage and loss in a substantial and unliquidated amount by depriving it of the benefit of the reasonably anticipated advantageous business relations and contracts.  Defendants' intentional interference with contract was intentional, willful and malicious.  Therefore, Virbac is entitled to recover punitive damages from Defendants.

### Count X
### Conspiracy

67.    Defendants have combined together to steal Virbac's confidential information covered by the Development Agreement and the PTA, including the Know-How and/or Trade Secrets associated with the Products and the Product Lines.  Defendants' conspiracy has destroyed Virbac's advantage over its competitors and has destroyed the value of its confidential information covered by the Development Agreement and the PTA, including the Know-How and/or Trade Secrets associated with the Products and the Product Lines.

68.    Defendants' actions constitute conspiracy under Texas law.  Indeed, the situs of the Know-How and/or Trade Secrets is in Texas, a substantial amount of the conduct underlying Defendants' conspiracy occurred in Texas and the injury felt by Virbac as a result of Defendants' conspiracy was felt in Texas.  Moreover, Texas has a substantial interest in protecting its residents from Defendants' conduct in this case.

69.    Defendants' conspiracy has caused and will likely continue to cause Virbac immediate and irreparable harm, in that Virbac will lose the manufacturing head start associated with the Products and Product Lines.  Since the Know-How and/or the Trade Secrets associated with the Products and the Product Lines were wrongfully published and placed in the public domain by Defendants, Virbac may lose the remaining patent rights associated with the Products and the Product Lines if Defendants continue to prosecute the U.S. Applications to issuance with unnecessarily narrow claims, let the U.S. Applications go abandoned, or fail to file continuation applications claiming priority to the U.S. Applications before the U.S. Applications issue or go abandoned.  Unless Defendants are immediately enjoined from proceeding with their plan, Virbac stands to lose any remaining patent rights in the formerly and unfairly disclosed confidential and proprietary information (including but not limited to the Know-How and/or the Trade Secrets) that were made public through Defendants' fraud on the USPTO and WIPO. Therefore, Virbac requests the issuance of a preliminary injunction and permanent injunction to prevent Defendants' continued conspiracy.

70.    Virbac also seeks to recover any monetary damages caused by Defendants' conspiracy.  However, as entitled above, Virbac's monetary damages are currently unliquidated and incapable for being calculated at this time.

## Count XI
### Injunctive Relief

71.    Virbac seeks a preliminary injunction and a permanent injunction against Defendants.  If Defendants are allowed to continue to steal Virbac's business advantages and its confidential and proprietary information, including but not limited to the Know-How and/or Trade Secrets, Virbac will continue to suffer irreparable harm.  As described above, there is no

adequate remedy at law to protect or compensate Virbac for the irreparable damage that has already been done or to be done as a result of the Defendants' continued conduct.

72.     Defendants' actions have forced Virbac to attempt to protect what value the Products and Product Lines have left through the patenting process, which will only protect Virbac's Know-How and/or Trade Secrets for a finite amount of time.  Virbac no longer has the option to protect its valuable Know-How and/or the Trade Secrets in a conventional manner for eternity.  Defendants have also further compounded this problem and exposed Virbac to additional irreparable harm by committing a fraud on the USPTO and WIPO by misrepresenting their status as inventors and by failing to properly prosecute the U.S. Applications and the PCT Applications.  If this Court does not enjoin Defendants from their continued wrongful activity and assign the U.S. Applications and the PCT Applications to Virbac (so that they can be prosecuted properly), it is likely that the value of the Products and Product Lines will be completely destroyed.

73.     Specifically, Virbac requests a preliminary injunction and a permanent injunction: (i) ordering Defendants to assign all rights they may have in the U.S. Applications and the PCT Applications to Virbac; (ii) enjoining Defendants from representing that they are the owners, title holders or inventors of the subject matter in the U.S. Applications and the PCT Applications; (iii) enjoining Defendants from registering, making, selling or otherwise distributing the Products or the Product Lines; (iv) enjoining Defendants from using or disclosing any confidential information or trade secrets belonging to Virbac, including the Know-How and/or Trade Secrets associated with the Products and the Product Lines; (v) placing the U.S. Applications in a constructive trust so that Virbac has control over the prosecution until inventorship issues are resolved by USPTO; and (vi) enjoining Defendants from prosecuting the U.S. Applications and the PCT Applications, or alternatively, from allowing the U.S. Applications and the PCT

Applications to issue or to be abandoned without filing continuation patent applications in order to protect any remaining patentable rights Virbac may be able to secure.

### Count XII
### Attorney's Fees

74.    Virbac is entitled to recover its reasonable and necessary attorneys' fees, expenses, and court costs, pursuant to 15 U.S.C. §1117(a).  More specifically, Virbac is entitled to a recovery of its attorneys' fees in this case because Defendants' actions as described above, were fraudulent, deliberate, willful and intentional.  Accordingly, this case is "exceptional" under 15 U.S.C. §1117(a).

## VI.    DEMAND FOR TRIAL BY JURY

75.    Pursuant to Fed. R. Civ. P. 38, Plaintiff respectfully demands a trial by jury in this cause.

## VII.    CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Virbac Corporation respectfully requests that Defendants Chanelle Pharmaceuticals Manufacturing Ltd., Hartz Mountain Corporation, Michael Burke, Vinay Tripathi, Albert Ahn, and Ian Cottrell, be cited to appear and answer, and that the Court issue the following:

   a.    a preliminary injunction restraining Defendants, and their employees, agents or other representatives and all persons in active concert or participation with Defendants or under their authority, from directly or indirectly registering selling, marketing, producing and/or manufacturing the previously defined Products and Product Lines;

   b.    a preliminary injunction ordering Defendants, and their employees, agents or other representatives and all persons in active concert or participation with Defendants or under their authority to assign all rights they may have in the previously defined U.S. Applications and the PCT Applications to Plaintiff Virbac;

   c.    a preliminary injunction restraining Defendants, and their employees, agents or other representatives and all persons in active concert or

participation with Defendants or under their authority, from directly or indirectly representing that they are the owners or title holders of the subject matter of the U.S. Applications and the PCT Applications, including but not limited to the previously defined Products or Product Lines or the Know-How and/or Trade Secrets associated with the Products and the Product Lines;

d.    a preliminary injunction restraining Defendants, and their employees, agents or other representatives and all persons in active concert or participation with Defendants or under their authority, from directly or indirectly using or disclosing any remaining confidential information or trade secrets belonging to Plaintiff Virbac, including but not limited to the to the previously defined Know-How and/or Trade Secrets associated with the Products and the Product Lines;

e.    a preliminary injunction restraining Defendants, and their employees, agents or other representatives and all persons in active concert or participation with Defendants or under their authority, from directly or indirectly prosecuting the U.S. Applications and the PCT Applications, or alternatively from allowing the U.S. Applications or the PCT Applications to issue or to be abandoned without filing continuation patent applications in order to protect any remaining patentable rights Virbac may be able to secure; and

f.    a preliminary injunction placing the U.S. Applications and the PCT Applications in a constructive trust for the benefit of Plaintiff Virbac so that Virbac has control over the prosecution until inventorship issues are resolved by USPTO.

Plaintiff Virbac Corporation further requests that, after a final trial or adjudication on the merits, the Court make the above-referenced preliminary injunction into a permanent injunction, award Virbac all of its monetary damages caused by Defendants' misappropriation of trade secrets, violations of the Lanham Act, fraud, conversion, tortious interference, unjust enrichment, unfair competition and conspiracy and that the Court award Virbac its prejudgment and postjudgment interest as allowed by law, its reasonable and necessary attorneys' fees, punitive damages for Defendants' intentional and malicious tortious conduct and Virbac's court costs. Finally, Plaintiff Virbac requests such other and further relief, at law or in equity, to which the Court deems just, equitable, and proper.

Respectfully submitted,

Richard D. Horn, Esq.
D.C. Bar #425945
Bracewell & Giuliani LLP
2000 K Street, N.W., Suite 500
Washington, D.C. 20006
Telephone: (202) 828-5800
Facsimile: (202) 223-1225
richard.horn@bracewellgiuliani.com

ATTORNEYS FOR PLAINTIFF
VIRBAC CORPORATION

OF COUNSEL:

Elizabeth D. Whitaker
TX State Bar No. 00000078
Michelle E. Roberts
TX State Bar No. 17014435
Bracewell & Giuliani LLP
500 North Akard Street, Suite 4000
Dallas, Texas 75201
Telephone:  (214) 758-1000
Facsimile:  (214) 758-1010

John H. Barr, Jr.
TX State Bar No. 00783605
Richard F. Whiteley
TX State Bar No. 24013744
Christopher D. Northcutt
TX State Bar No. 24028558
Bracewell & Giuliani LLP
711 Louisiana, Suite 2300
Houston, Texas 77002
Telephone: (713) 223-2300
Facsimile: (713) 221-1212