IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VIRBAC CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:05CV01128 (RMU) |
| ) | |
| CHANELLE PHARMACEUTICALS ) | |
| MANUFACTURING LTD., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS THE HARTZ MOUNTAIN CORPORATION, ALBERT AHN
AND IAN COTTRELL'S MOTION TO DISMISS OR TRANSFER FOR
IMPROPER VENUE, OR ALTERNATIVELY, MOTION TO DISMISS COUNTS
I, II AND III OF THE COMPLAINT FOR FAILURE TO STATE A CLAIM
<u>UPON WHICH RELIEF CAN BE GRANTED</u>**

GREENBERG TRAURIG, LLP
800 Connecticut Avenue, N.W., Suite 500
Washington, D.C. 20006
Telephone: (202) 331-3100
Facsimile: (202) 331-3101

*Counsel for Defendants
The Hartz Mountain Corporation,
Albert Ahn and Ian Cottrell*

Defendants The Hartz Mountain Corporation ("Hartz"), Albert Ahn and Ian Cottrell (collectively, the "Hartz Defendants"), by and through counsel, respectfully submit this statement of points and authorities in support of their motion to dismiss or transfer for improper venue, or alternatively, to dismiss Counts I, II and III of the Complaint (collectively, the "Federal Claims") for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

This case concerns process technologies for combining three pet pharmaceuticals into one stable canine heartworm medication. These technologies are the subject of two patent applications filed with and rejected by the United States Patent and Trademark Office (the "USPTO"). Plaintiff Virbac Corporation ("Virbac") contends that one or both of the technologies derived either from ideas, "trade secrets," "know-how," or other "proprietary and confidential information" transferred between and among defendant Chanelle Pharmaceuticals Manufacturing Limited ("Chanelle") and two non-parties to this action. The Complaint avers generally that Chanelle subsequently passed the unspecified "trade secrets," "know-how" and "proprietary and confidential information" to Hartz. The Hartz Defendants dispute Virbac's averments.

This action has been improperly venued in this judicial district. Neither Virbac, Chanelle, the Hartz Defendants, nor the non-parties alleged to have passed information to Chanelle, is a citizen of the District of Columbia, and none of the events described in the Complaint took place here. Virbac's only basis for choosing this venue is its contention that defendants defrauded the USPTO by submitting false patent applications and assignments based upon the allegedly misappropriated ideas and information. The USPTO is not located in this judicial district. It is in the Eastern District of Virginia

1

(specifically, in Arlington, Virginia). One can only surmise that Virbac made a glaring factual mistake. Regardless, venue cannot be premised solely upon a party's official contacts with a government agency. The Complaint should therefore be dismissed.

This Court has the discretion either to dismiss the Complaint outright based upon improper venue, or to transfer the case to the judicial district where it should have been commenced in the first instance: the District of New Jersey. Indeed, a first-filed action between Hartz and Chanelle arising from a contractual venture that resulted in the development of the technologies and the filing of the patent applications at issue here is already being actively litigated in the District of New Jersey, where jurisdiction has been established.

Chanelle, an Irish company, initially moved to dismiss the New Jersey action, but subsequently consented to both jurisdiction and venue in that court. It did so for good reason, as the majority of the witnesses and documentary evidence concerning the technologies at issue is located in New Jersey, and Hartz and Chanelle performed their contract in New Jersey. A transfer to New Jersey will be more convenient for defendants, who are already litigating there, and no more inconvenient for Virbac than litigating in the District of Columbia, where it originally intended to litigate.

In addition to laying venue in an entirely inappropriate forum, Virbac's Complaint improperly attempts to assert three federal law claims. Each of these claims fails to state a claim upon which relief can be granted. Two of the claims allege violations of § 43 of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1125. Neither is viable because the Lanham Act does not provide a federal remedy for either misappropriation of trade secrets, or for claims arising from alleged misrepresentations about the invention or

ownership of an underlying idea – such as the process technologies at issue – used in manufacturing a product. Virbac's third federal law claim, for "fraud on the USPTO," is not viable because no patent relating to the technologies ever issued; Virbac instead complains only about applications for patents that the USPTO has rejected. Accordingly, if the case is not dismissed or transferred for improper venue, then at a minimum, each of these claims should be dismissed with prejudice.

## STATEMENT OF FACTS

### A. The Contractual Relationship And Ensuing Litigation Between Hartz And Chanelle

Hartz is a New Jersey corporation headquartered in Secaucus, New Jersey that develops, produces, markets, and sells veterinary medicines and other quality pet products. Complaint ¶ 3; Certification of Albert Ahn, dated August 29, 2005 (attached as Exhibit 2 to the Declaration of Eric S. Aronson, dated September 29, 2005) ¶ 2. Chanelle is a competitor of Hartz located in Loughrea, Ireland, that develops, manufactures and sells veterinary pharmaceuticals. Complaint ¶ 2; Ahn Cert. ¶¶ 3, 11.

In 2002, Chanelle represented to Hartz that it had developed and commercialized a product known as "Dronhart" that combined three heartworm pharmaceuticals. Chanelle further represented to Hartz that it owned the process technology that was the basis of Dronhart, and which specifically allowed a pet heartworm pharmaceutical, Ivermectin, to be safely combined with two separate heartworm pharmaceuticals, Praziquantel and Pyrantel. Ahn Cert. ¶¶ 3-4.

Chanelle approached Hartz and made numerous misrepresentations intended to induce Hartz to enter into a business alliance by which the two companies would manufacture and sell Dronhart and similar veterinary products in, among other places,

3

New Jersey. *Id.* ¶¶ 3-9. The alliance sought to combine Hartz's expertise in marketing animal health products in the U.S. with expertise that Chanelle represented it possessed in developing and manufacturing particular veterinary products. *Id.* ¶ 11.

Hartz's and Chanelle's negotiations culminated in a Confidential License and Supply Agreement, dated January 10, 2003 (the "Alliance Agreement"). *Id.* ¶¶ 1, 15-16. The Alliance Agreement obligated Chanelle to manufacture certain veterinary products pursuant to commercial Good Manufacturing Practices codified at 21 C.F.R. parts 210 and 211, and in compliance with regulations promulgated by, among other agencies, the U.S. Food and Drug Administration's Center for Veterinary Medicine ("FDA/CVM"). *Id.* ¶ 17. Chanelle's managing director, defendant Michael Burke, traveled to Hartz's New Jersey headquarters on three separate occasions from 2002 to 2004: once to complete the negotiations for the Alliance Agreement, and twice regarding product development and regulatory compliance issues. *Id.* ¶¶ 13-14, 22-25.

By March 2004, the project was seriously floundering. Notwithstanding Chanelle's representations to the contrary regarding Dronhart, a commercially viable product could not be produced using Chanelle's process technology. Chanelle advised Hartz that it could develop a commercially viable product by using a different process technology, but that Hartz would need to invest over $3 million more in specialized equipment and improvements to upgrade Chanelle's existing facility to allow for production. *Id.* ¶ 24.

Ultimately, Hartz decided not to fund Chanelle's request until it could provide Hartz with sufficient data demonstrating that the products could obtain FDA/CVM approval. After several months had passed without the production of such data, Chanelle

4

missed the contractual January 1, 2005 deadline for registering the products with FDA/CVM. Hartz had a contractual right to terminate the Alliance Agreement under these circumstances, which it exercised by letter dated January 21, 2005. *Id.* ¶ 27.

Hartz was damaged as a result of Chanelle's breaches of the Alliance Agreement and by Chanelle's corresponding misrepresentations regarding, among other things, its ability to deliver marketable veterinary products that fully complied with FDA/CVM regulations. Those damages exceed $500,000, and include without limitation, the costs of purchasing laboratory equipment and raw materials for the failed venture, and the expenses incurred in connection with certain audits and analyses of stability tests conducted by Chanelle. *Id.* ¶ 28.

Accordingly, Hartz sued Chanelle in the U.S. District Court for the District of New Jersey on May 11, 2005, asserting claims sounding in breach of contract, breach of the implied covenant of good faith and fair dealing, and negligent misrepresentation (the "New Jersey Action"). Aronson Decl. ¶ 2, Ex. 1. Although Chanelle initially moved to dismiss the New Jersey Action on both jurisdictional and *forum non conveniens* grounds, and for failure to state a claim upon which relief can be granted, it later withdrew that motion in its entirety and agreed to answer the complaint. *Id.* ¶¶ 4-5.

B. **Virbac's Claims And Subsequently Filed Lawsuit**

Virbac is a Delaware corporation headquartered in Ft. Worth, Texas, and a competitor of both Hartz and Chanelle in the development, production and sale of veterinary medicines. Complaint ¶¶ 1, 14. Virbac avers that on December 22, 1999, it entered into a "Development Agreement" with non-parties Blue Ridge Pharmaceuticals, Inc. ("Blue Ridge") and IDEXX Laboratories, Inc. ("IDEXX") for the exclusive rights to

5

manufacture, market and sell "certain liver-flavored products used for the treatment and prevention of heartworms, roundworms, hookworms or tapeworms in dogs" under the trade names "2G" and "3G," and to use certain "processes, recipes, ingredients and know-how associated with" such products.[1] *Id.* ¶¶ 14-15. The Complaint is devoid of any descriptions as to how these products, "processes," "recipes," or "know-how" in any way relate to any of the patent applications discussed below.

Virbac avers that because such "know-how" and alleged trade secrets provide it with a competitive advantage, it has invested money in the manufacturing process and sought to maintain the confidentiality of this information. *Id.* ¶ 19. It further avers that the Development Agreement contains provisions prohibiting the disclosure of any "proprietary" information related to the subject products, as well as the development, manufacture, marketing, or sale of any competing products, either directly or by assisting any third party. *Id.* ¶ 16.

The Complaint avers that in September 2001, Blue Ridge and IDEXX sought Virbac's permission to disclose the Development Agreement to Chanelle, but that Virbac agreed only to the disclosure of the agreement's "terms" rather than of any allegedly proprietary or confidential information governed thereunder. *Id.* ¶ 18. For reasons not explained in the Complaint, Virbac does not appear to be pursuing any claims against either Blue Ridge or IDEXX. Nonetheless, Virbac avers that these companies disclosed

---

[1] For purposes of this motion only, the Hartz Defendants accept as true all of the well-pleaded averments in the Complaint, as they must with respect to a motion brought pursuant to Rule 12 of the Federal Rules of Civil Procedure. *Gilvin v. Fire*, 259 F.3d 749, 756 (D.C. Cir. 2001). The Hartz Defendants do not, however, accept any of the numerous legal conclusions – *e.g.*, the use of the terms "trade secret," "confidential," and "proprietary" to describe certain information – contained in the Complaint that Virbac has cast in the form of factual averments. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

6

to Chanelle whatever information Virbac now complains about (but fails to describe) without its authorization. *Id.* ¶¶ 20, 23. Virbac implies (but does not explicitly aver) that Chanelle thereafter passed to Hartz whatever information forms the basis of Virbac's claims here. It is undisputed that none of the Hartz Defendants is a party to any of the alleged agreements between or among Chanelle, Virbac, Blue Ridge, and IDEXX, and unclear how Virbac has standing to pursue claims for alleged breaches of any such agreements.

Virbac maintains that Dr. Burke, defendant Vinay Tripathi (who is either an employee or independent contractor of Chanelle), Dr. Ahn (Hartz's Chief Scientific Officer), and Dr. Cottrell (a Hartz employee) (collectively, the "Individual Defendants") filed certain patent applications with the USPTO and the World Intellectual Property Organization (which were assigned to Chanelle and Hartz) that contain unspecified information that either had allegedly been improperly disclosed to Chanelle – presumably by Blue Ridge or IDEXX – or that somehow relates to such information.[2] *Id.* ¶¶ 20-21. Virbac also accuses the Individual Defendants of falsely stating that they were the inventors of the two different process technologies disclosed in the patent applications, but does not suggest who, if anyone else, could legally claim inventorship. *Id.* ¶¶ 20, 22.

---

[2] It cannot be overemphasized that the Complaint makes no attempt to specify the information at issue in this action beyond the use of the legal conclusions "trade secret" or "proprietary," or the vague term "know-how." There is no fact averred in the Complaint even suggesting that (a) any information was passed directly from Virbac to any defendant, (b) any information that originally resided with Virbac ever reached any defendant, or (c) any information – regardless of its origin or recipient – is or ever was a "trade secret" or "proprietary." Absolutely no connection whatsoever can be gleaned from the Complaint between the "trade secrets," "proprietary information," and "know-how" averred therein and the process technologies described in the relevant patent applications.

7

Virbac claims to have been irreparably harmed by the public disclosure of some unspecified information (in which it may or may not have legal rights) in patent applications that have initially been rejected by the USPTO.[3] Virbac's only "damage" appears to be its fear that such prior rejections may lead to the disclosed process technologies one day entering the public domain, where they may then be used in the manufacture and sale of competing products.[4] *Id.* ¶¶ 24-25. Virbac vaguely claims only that it has been "forced . . . to attempt to protect what value the Products and Product Lines may have left through the patenting process . . . ." *Id.* ¶ 26.

Virbac commenced this action on June 7, 2005.[5] The Complaint asserts claims sounding in violation of § 43 of the Lanham Act, "fraud on the USPTO," misappropriation of trade secrets, unfair competition, conversion, unjust enrichment, tortious interference with contract and prospective business relations, and conspiracy[6], for

---

[3] The rejection of these initial patent applications is not a final decision by the USPTO regarding the patentability of the process technologies described therein. To the contrary, the patent applications at issue here continue to be prosecuted to attempt to address the USPTO's expressed concerns.

[4] Even this generalized fear is unsupported by the averments in the Complaint. For example, Virbac nowhere avers that it has actually manufactured any specific product similar to those resulting from the processes described in the patent applications, or that any inventor sought patent or other legal protection for any technology used in connection with any such product.

[5] Although service of process was never effected on any of the Hartz Defendants, they have each chosen to appear in this action in the interest of moving the case forward.

[6] Virbac pleads its state law claims under Texas law. Complaint ¶¶ 43, 49, 53, 56, 61, 65, 68. Although not the subject of this Motion, there is no legal or factual basis to support the application of Texas law to this dispute.

8

which it seeks money damages and attorneys' fees.[7]

# ARGUMENT

## I. THIS CASE HAS NO CONNECTION TO EITHER THE DISTRICT OF COLUMBIA OR VIRGINIA

Virbac lays venue in this district solely on the basis of its averment that defendants "have availed themselves of the benefits and protections afforded by the USPTO by filing certain patent applications, assignment documents and other patent application related documents, which are the subject of this lawsuit and by making certain misrepresentations to the USPTO." Complaint ¶ 11. Even if this was an appropriate basis for venue – which it is not – Virbac has its facts wrong. ***The USPTO is not located in the District of Columbia***, but in Arlington, Virginia.

Even the USPTO's alleged connection to the underlying transactions cannot support venue in this district. *See Boundy v. United States Patent & Trademark Office*, 2002 WL 32166534 *3 (D.D.C. Oct. 2, 2002) (transferring case to Eastern District of Virginia; claim against USPTO cannot be properly venued in District of Columbia, notwithstanding presence of USPTO's "mail drop address" here). For this reason alone, the Complaint should be dismissed based upon improper venue or transferred to a more appropriate judicial district. That district, however, is not the Eastern District of Virginia, which bears no relationship to this action. It is the District of New Jersey, where the New Jersey Action – which concerns the same process technologies and patent applications

---

[7] Virbac also asserts a separate "claim" for "injunctive relief," seeking to (a) require defendants to assign it their respective rights in the patent applications, (b) enjoin defendants from (i) holding themselves out as the owners of the process technologies disclosed in the patent applications, (ii) manufacturing, distributing or selling products based on such process technologies, (iii) using any of its alleged "trade secrets," "proprietary information" or "know-how," or (iv) either further prosecuting the patent applications, or conversely, causing them to be abandoned, and (c) place the U.S. patent applications in a constructive trust for its benefit. Complaint ¶¶ 71-73.

averred in the Complaint – is already pending between Hartz and Chanelle, and where the majority of the witnesses and evidence are located.

### A. The Complaint Should be Dismissed Outright for Improper Venue

In laying venue in this district, Virbac invokes 28 U.S.C. § 1391(b), which is the venue statute in so-called "federal question" cases. Complaint ¶ 12. The statute provides that venue may be laid only in: "(1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought."

Venue must be proper as to every claim in a multi-claim complaint. *Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 98 (D.D.C. 2003). Where multiple districts may arguably meet the elements of subsection (2) (the only subsection applicable here), the controlling factors are the accessibility of evidence and the convenience of **defendants**. *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 760 F.2d 312, 317 (D.C. Cir. 1985), citing *Leroy v. Great W. United Corp.*, 443 U.S. 173, 185 (1979).

For complaints (like Virbac's) that arise from complex contractual disputes, yet also assert misrepresentation-based claims, this Court typically looks to the residences of the contracting parties, the place where the agreement was negotiated, ultimately agreed to and consummated, as well as the place where any "critical" misrepresentations were made. *See, e.g., In re U.S. Office Prods. Co. Sec. Litig.*, 251 F. Supp. 2d 58, 65 (D.D.C. 2003); *Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 28 (D.D.C. 2002). Similarly, in cases alleging the misappropriation of trade secrets or other

confidential business information, courts typically look to the location where the information was disclosed (or where the party stole or received access to the information), where commercial use was made of the information, and where the injury from the alleged theft is likely to be sustained. *See, e.g., Ciena Corp. v. Jarrard*, 203 F.3d 312, 318 (4th Cir. 2000); *Hicklin Eng'g, L.C. v. Bartell*, 116 F. Supp. 2d 1107, 1111 (S.D. Iowa 2000).

None of the above factors supports venue in the District of Columbia. Neither Virbac nor any defendant resides in the District of Columbia. Complaint ¶¶ 1-7. Virbac does not aver either that the Development Agreement, the Alliance Agreement or any other potentially relevant contract was negotiated, executed or performed in the District of Columbia, or that any misrepresentation was made by or to any party in the District of Columbia.[8] The Complaint neither specifically identifies nor avers that any alleged confidential information of any nature was disclosed to anyone in the District of Columbia, that defendants gained access to such information in the District of Columbia, or that anyone made commercial use of any information in any manner in the District of Columbia. Finally, Virbac does not aver that it sustained any injury within the District of Columbia (or anywhere else for that matter). Indeed, Virbac could not make any of the above averments without violating Fed. R. Civ. P. 11.

These venue defects cannot be cured merely by acknowledging that the USPTO is located in the Eastern District of Virginia and transferring the case there, as that district also has none of the connections with the parties' dispute discussed in the preceding paragraph. As is true with respect to the assertion of personal jurisdiction, a defendant's

---

[8] For example, the agreements attached to the Complaint contain forum selection provisions in favor of North Carolina and Delaware, respectively. Complaint Ex. A ¶ 15, Ex. B ¶ 12.

mere "government contacts" with a judicial district are an insufficient basis upon which venue may be predicated. *See Cellutech, Inc. v. Centennial Cellular Corp.*, 871 F. Supp. 46, 50 (D.D.C. 1994) (disregarding defendant's filings with FCC and SEC with respect to disputed contract for sale of cellular radio system); *National Coal Ass'n v. Clark*, 603 F. Supp. 668, 672 (D.D.C. 1984) (disregarding defendant's maintenance of governmental affairs office and limited personal and written communication with Interior Department concerning subject challenges to Department's decisions to exchange federal property containing substantial coal reserves for property owned by private defendants).

Accordingly, Virbac's "fraud on the USPTO" venue theory should be rejected, and venue may not be laid in either the District of Columbia or the Eastern District of Virginia on any such basis.

### B. In The Alternative, The Case Should Be Transferred To The District Of New Jersey

Rather than dismiss the Complaint outright, the Court has discretion to transfer the case to the most appropriate judicial district.[9] 28 U.S.C. § 1406(a). *See also Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983) (court may transfer case to more appropriate venue even upon finding that it lacks personal jurisdiction over defendants). If the Court is willing to exercise that discretion, the most appropriate venue for this case is the District of New Jersey, where the New Jersey Action is already pending, and where the majority of the witnesses and evidence are located.

---

[9] Even if any basis existed to support venue in this district, the Court still maintains discretion to transfer the case to another judicial district where venue would be proper pursuant to 28 U.S.C. § 1404(a), upon motion of a party. 28 U.S.C. § 1404(b). The former provision states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." This decision is made on an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 27 (1988).