To effect such a discretionary transfer of venue, the proposed transferee jurisdiction must, of course, be one in which venue is proper in the first instance. Assuming that, a number of private and public interest considerations must weigh in favor of transfer. *Stewart Org.*, 487 U.S. at 29. The private interest considerations include:

    a. Plaintiff's choice of forum, unless the balance of convenience is strongly in defendant's favor;

    b. Defendant's choice of forum;

    c. Whether the claim arose elsewhere;

    d. The convenience of the parties;

    e. The convenience of the witnesses, but only to the extent that a witness would be unavailable for trial in one of the jurisdictions; and

    f. The ease of access to the sources of proof.

*Schmidt v. American Institute of Physics*, 322 F. Supp. 2d 28, 31-32 (D.D.C. 2004) (Urbina, *J.*). The public interest considerations include (a) the transferee district's familiarity with the governing laws; (b) the relative congestion of the two courts' calendars; and (c) the local interest in deciding local controversies at home. *Id.* at 32.

Almost all of the above factors – and all of the most important ones – militate in favor of a transfer to the District of New Jersey. As described above, the locus of the venture between Hartz and Chanelle and the performance of their Alliance Agreement, which resulted in the patent applications that are alleged to lie at the heart of this action, was in New Jersey. Specifically, because each of Virbac's claims essentially arises from the efforts of Hartz and Chanelle to develop certain veterinary pharmaceutical products (allegedly using process technologies somehow derived from information belonging to

Virbac) and to secure the assignment of patents for the underlying process technologies, the key witnesses, documents and other evidence is located in New Jersey. Similarly, by the Complaint's own definition, to the extent that any misrepresentation was made, or any trade secret, proprietary information or "know-how" was unfairly exploited (which the Hartz Defendants deny), those events could logically only have taken place at Hartz's principal place of business or facilities in New Jersey.

Transfer to New Jersey will also be more convenient for the Hartz Defendants, Chanelle and Dr. Burke (who are already litigating there) than requiring them to litigate claims arising from the same transactions in two jurisdictions.[10] *See Holland v. A.T. Massey Coal*, 360 F. Supp. 2d 72, 76 (D.D.C. 2004) (action transferred where claims could have been asserted within ongoing litigation between parties in Maryland); *Biochem Pharma, Inc. v. Emory Univ.*, 148 F. Supp. 2d 11, 13-14 (D.D.C. 2001) (deferring to first-filed and related patent infringement action in Georgia); *Smiths Indus. Med. Sys., Inc. v. Ballard Med. Prods., Inc.*, 728 F. Supp. 6, 7 (D.D.C. 1989) (deferring to "first-filed, comprehensive, relatively advanced related action in New Hampshire" embracing plaintiff's trademark infringement claims). Conversely, requiring Texas-based Virbac to litigate its claims in New Jersey will be no more inconvenient to it as a practical matter than prosecuting those claims in its chosen District of Columbia forum.

The only factors militating against a transfer to New Jersey are Virbac's residence and choice of forum.[11] These factors are significantly less important, however,

---

[10] Chanelle and Dr. Burke join in this Motion to the extent that it seeks the transfer of this action to the District of New Jersey. Aronson Decl. ¶ 6.

[11] The mere averment that Texas law (with which this Court is likely no more familiar than the district judge in the New Jersey Action) governs this dispute is not a factor that militates against transfer – assuming, *arguendo*, that Texas (rather than New Jersey) law even applies.

14

than the accessibility of the evidence and the convenience of defendants, which overwhelmingly favor transferring the case to the District of New Jersey.[12] *Noxell Corp.*, 760 F.2d at 317.

This Court transferred venue pursuant to 28 U.S.C. § 1404(a) in *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48 (D.D.C. 2000), a case with significant factual similarities to this one. The *Reiffin* plaintiff, a California resident, averred that Microsoft and its counsel, a Virginia resident attorney who practiced in the District of Columbia office of Foley & Lardner, conspired to infringe on his patents for an editor-compiler system that allegedly expedited the writing of certain software, and that the lawyer libeled him by describing the patents as "submarine patents"[13] to a class of law students. *Id.* at 49.

Plaintiff's prior infringement action against Microsoft had been dismissed on summary judgment by a court in the Northern District of California. While his appeal to the Ninth Circuit was pending, plaintiff brought the second action in the District of Columbia. Conceding that venue was proper here, defendants moved to transfer the case to California. *Id.* at 49-50.

---

[12] Virbac might argue that the residences of Blue Ridge and IDEXX and the forum selection clauses in favor of Delaware or North Carolina contained in the agreements attached to the Complaint should be considered. These entities, however, are not parties to this action. As such, their citizenship and provisions in their separate agreements with Virbac cannot bind the Hartz Defendants. *Naegele v. Albers*, 355 F. Supp. 2d 129, 139 (D.D.C. 2005) (Urbina, *J.*). These forum selection clauses thus cannot support an assertion of venue in this case. *See Hendricks v. Bank of Am., N.A.*, 408 F.3d 1127 (9th Cir. 2005) (affirming refusal to transfer wrongful dishonor of letter of credit action against issuing bank to jurisdiction selected in contract between bank's customer and letter of credit beneficiary).

[13] This phrase is often used to describe a patent that is "submerged" during a long *ex parte* examination process, but which "surfaces" only when other parties appear interested in using the patented technology or information.

In granting the motion, this Court analyzed the private and public interest considerations discussed above and concluded that transfer to California was appropriate. *Id.* at 58. In doing so, the Court placed particular emphasis on the California court's familiarity with the parties and the dispute from the prior patent infringement action and superior ability to determine the preclusive effect of that action. *Id.* at 54-57. The Court also deemed plaintiff's California citizenship significant, found its own docket more congested than that of the California court, and held the other factors to either be neutral or to favor transfer.[14] *Id.* at 53, 57.

For the foregoing reasons, the only reasonable alternative to an outright dismissal of the Complaint on venue grounds is to transfer the case to the District of New Jersey where it belongs.

---

[14] This Court has transferred a variety of other cases pursuant to 28 U.S.C. § 1404(a) as well. *See Schmidt* (breach of employment contract action against not-for-profit corporate defendant affiliated with University of Maryland); *Liban v. Churchey Group II, L.L.C.*, 305 F. Supp. 2d 136 (D.D.C. 2004) (housing discrimination action against Maryland real estate developer); *Sierra Club v. Flowers*, 276 F. Supp. 2d 62 (D.D.C. 2003) (environmental action against U.S. Army Corps of Engineers and U.S. Fish and Wildlife Service arising from issuance of mining permits in Florida Everglades); *Mikkilineni v. Penn Nat'l Mut. Cas. Ins. Co.*, 271 F. Supp. 2d 142 (D.D.C. 2003) (action arising from terminated government contract in light of orders issued in prior Pennsylvania action between parties); *Trout Unlimited v. United States Dep't of Agric.*, 944 F. Supp. 13 (D.D.C. 1996) (environmental action against U.S. Forest Service arising from issuance of easement for dam and reservoir on public land in Colorado); *Kafack v. Primerica Life Ins. Co.*, 934 F. Supp. 3 (D.D.C. 1996) (claim by beneficiary of life insurance policies entered into in Maryland); *Neubrech v. American Nat'l Red Cross*, 2005 WL 485185 (D.D.C. Mar. 2, 2005) (claim of negligent administration of blood donation procedure in Maryland).

## II. IN THE ALTERNATIVE, NONE OF THE FEDERAL CLAIMS STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Virbac premises federal question jurisdiction on three claims in the Complaint: (1) Count I, which alleges a violation of § 43 of the Lanham Act based upon defendants' alleged theft of its alleged trade secrets, (2) Count II, which alleges a separate violation of § 43 of the Lanham Act based upon defendants' alleged "false advertising," and (3) Count III, a claim for "fraud on the USPTO." Complaint ¶¶ 28-41. Each of these claims is premised on the same averment: that defendants misrepresented themselves as the inventors and owners of the underlying process technologies described in certain patent applications. None, however, states a claim upon which relief can be granted. Thus, if the Court determines that venue is proper in this district, then Counts I, II and III of the Complaint should be dismissed with prejudice.[15]

When considering a Rule 12(b)(6) motion, while the Court must accept as true the factual averments contained in the Complaint and any reasonable inferences that can be drawn therefrom, "it is not, however, proper to assume that [plaintiff] can prove facts that it has not alleged or that the defendants have violated [federal] laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). A court need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss. *Mountain States*

---

[15] The outright dismissal of these claims against all defendants will not necessarily defeat subject matter jurisdiction in a federal district court. None of the defendants is a citizen of Delaware or Texas, the states of which Virbac is a citizen. *Id.* ¶¶ 1-7. Accordingly, assuming that Virbac can allege in good faith damages in excess of $75,000 (an allegation that would most certainly be challenged by the Hartz Defendants), diversity jurisdiction would be present. 28 U.S.C. § 1332(a)(1).

*Legal Found. v. Bush*, 306 F.3d 1132, 1137 (D.C. Cir. 2002), *cert. denied*, 540 U.S. 812 (2003).

As discussed in detail below, Virbac has not even come close to stating viable claims for violation of § 43 of the Lanham Act or "fraud on the USPTO." Accordingly, dismissal of those claims pursuant to Fed. R. Civ. P. 12(b)(6) is appropriate.[16]

### A. Virbac Cannot State A Viable Claim For Violation Of § 43 Of The Lanham Act

Virbac asserts two claims premised upon defendants' supposed violation of § 43 of the Lanham Act, which provides a private civil right of action to

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities . . . .

15 U.S.C. § 1125(a)(1).

Virbac first contends that defendants violated § 43 of the Lanham Act by misappropriating and "exposing" its alleged trade secrets, and by misrepresenting that they were the inventors and owners of the underlying process technologies for the products set forth in certain patent applications. Complaint ¶¶ 28-33. These averments do not state a claim for violation of the Lanham Act.

---

[16] Virbac's request for attorneys' fees, stated as a separate "claim," must likewise fail, as it is premised solely upon defendants' alleged Lanham Act violations. Complaint ¶ 74.

18

Section 43(a) of the Lanham Act is neither a general unfair competition law nor a federal trade secrets statute, and "does not provide a federal vehicle for the assertion of remedies for such business torts as 'misappropriation' or 'theft of trade secrets.'" 4 J. Thomas McCarthy, Trademarks and Unfair Competition § 27:7 (2002) ("McCarthy"). "'[B]ecause of its inherently limited wording, § 43(a) can never be a federal 'codification' of the overall law of 'unfair competition'" . . . but can apply only to certain unfair trade practices prohibited by its text." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003), quoting 4 McCarthy at § 27:7. *See also Alfred Dunhill, Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974) (§ 43(a) "does not have boundless application as a remedy for unfair trade practices").

Rather, § 43(a) of the Lanham Act is designed solely to protect consumers from deceptive designations as to a product's origin. *See International Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 918-19 (9th Cir. 1980) (Lanham Act was not designed to confer property rights or monopolies on owners of intellectual property, nor to protect litigants' business interests, but to protect the public).

The only supposed violation of § 43(a) of the Lanham Act averred in Count I of the Complaint is the use of information allegedly misappropriated from Virbac in certain patent applications. However, prior attempts to invoke the Lanham Act with respect to representations as to the inventorship of an idea or process have been squarely rejected. As the United States Supreme Court held:

> In sum, reading the phrase "origin of goods" in the Lanham Act in accordance with the Act's common-law foundations (which were *not* designed to protect originality or creativity), and in light of the copyright and patent laws (which *were*), **we conclude that the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods.**

19

> ***To hold otherwise would be akin to finding that § 43(a) created a species of perpetual patent and copyright, which Congress may not do.***

*Dastar*, 539 U.S. at 37 (citations omitted, bolded emphasis added).

There is not and can never be any averment in the Complaint that consumers have been confused about the *origin* of any product sold by defendants: the only alleged confusion is about who *invented* the process technologies which underlie certain *proposed* products that no defendant has yet sold commercially. Accordingly, Count I of the Complaint fails to state a claim for violation of § 43 of the Lanham Act and must therefore be dismissed.

Count II of the Complaint merely attempts to recast the same claim alleged in Count I under the title of "false advertising." Tellingly, no particular advertisement or marketing material circulated by defendants that is allegedly false is discussed anywhere in the Complaint. Instead, this claim is premised solely on representations made to the USPTO – not to the general public. *See* Complaint ¶ 34. Such representations do not constitute "false advertising" within the meaning of the Lanham Act, and thus cannot support a § 43(a) Lanham Act claim. *See Enzo Life Scis. Inc. v. Digene Corp.*, 295 F. Supp. 2d 424, 428 (D. Del. 2003); *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 942 F. Supp. 209, 216 (S.D.N.Y. 1996), *aff'd*, 314 F.3d 48 (2d Cir. 2002); *American Needle & Novelty, Inc. v. Drew Pearson Mktg., Inc.*, 820 F. Supp. 1072, 1078 (N.D. Ill. 1993).

Count II is merely a restatement of Count I's legally insufficient misrepresentation of origin claim. It should therefore be dismissed for the same reasons.

### B. Virbac Cannot State A Viable Claim For "Fraud On The USPTO"

Virbac premises yet a third claim – styled as "fraud on the USPTO" – on the same averment regarding the disputed ownership of the subject process technologies underlying its other, legally insufficient Lanham Act claims. Complaint ¶¶ 39-41. Virbac's third claim is entirely dependent upon an element that even it admits does not exist here – the actual issuance of a patent.

What was commonly known in the 1960s and 1970s as "fraud on the USPTO" is not an affirmative cause of action, but rather a defense to a claim of patent infringement that is now termed "inequitable conduct." *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 882 n.1 (9th Cir. 2000); *see also Haloro, Inc. v. Owens-Corning Fiberglas Corp.*, 288 F.2d 148, 149 (D.C. Cir. 1961) (using "fraud" and "inequitable conduct" interchangeably to describe defense to patent infringement complaint).

To prove inequitable conduct during the patent application process, the party asserting the defense must demonstrate that the applicant failed to disclose material information to the USPTO (or submitted false information) with an intent to deceive the government. *General Electro Music Corp. v. Samick Music Corp.*, 19 F.3d 1405, 1408 (Fed. Cir. 1994); *accord Oetiker v. Jurid Werke GmbH*, 671 F.2d 596, 600 (D.C. Cir. 1982) (proponent of inequitable conduct must show, based on clear, unequivocal and convincing evidence, a deliberate misrepresentation on applicant's part; good faith judgment, even if erroneous, is fatal to claim of inequitable conduct).

Even ignoring the procedural context in which Virbac attempts to assert this recognized defense without any claim of infringement, there is one critical element missing from the Complaint for purposes of a claim of inequitable conduct – an actual

21

patent issued by the USPTO. Virbac does not aver – because it cannot – that *any* particular representation or omission by defendants played *any* role in the USPTO's granting of *any* patent application. *See Sigma-Tau Industrie Farmaceutiche Riunite, S.p.A. v. Lonza, Ltd.*, 62 F. Supp. 2d 70, 74 (D.D.C. 1999) (element of materiality in inequitable conduct defense requires showing of substantial likelihood that reasonable patent examiner would have considered information important in deciding to allow pending application to issue as patent).

To the contrary, ***Virbac avers that no such application has ever been granted***. In fact, Virbac asserts claims and seeks equitable relief on the wholly inconsistent theory that the process technologies disclosed in the subject patent applications are at risk of one day being deemed abandoned precisely because the applications were initially rejected and ***no patent has yet issued***. Complaint ¶¶ 24, 35.

Accordingly, Virbac cannot state a viable claim for inequitable conduct or "fraud on the USPTO," and Count III of the Complaint should be dismissed. *See Air Prods. & Chems. v. Quigg*, 709 F. Supp. 1, 3-4 (D.D.C. 1988) (inequitable conduct defense "of no benefit" to applicant's competitor where no patent granted and application deemed to have been abandoned).

## **CONCLUSION**

For the foregoing reasons, the Hartz Defendants respectfully request that their Motion be granted, that the Court dismiss this action, or alternatively, transfer it to the District of New Jersey, or alternatively, that the Federal Claims in the Complaint be dismissed with prejudice.

Dated: September 30, 2005

Respectfully submitted,

_[signature]_

---

Timothy C. Bass (D.C. Bar No. 457109)
GREENBERG TRAURIG, LLP
800 Connecticut Avenue, N.W., Suite 500
Washington, D.C. 20006
Telephone: (202) 331-3100
Facsimile: (202) 331-3101

Eric S. Aronson
Douglas R. Weider
Todd L. Schleifstein (D.C. Bar No. 458932)
GREENBERG TRAURIG, LLP
200 Campus Drive, P.O. Box 677
Florham Park, New Jersey 07932
Tel: (973) 360-7900
Fax: (973) 301-8410

*Counsel for Defendants*
  *The Hartz Mountain Corporation,*
  *Albert Ahn and Ian Cottrell*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of September, 2005, I caused a true and correct copy of the foregoing to be served by electronic mail on the following persons:

Richard D. Horn, Esq.
BRACEWELL & GUILIANI LLP
2000 K Street, N.W., Suite 500
Washington, D.C. 20006

L. Barrett Boss, Esq.
COZEN O'CONNOR, PC
1667 K Street, N.W., Suite 500
Washington, D.C. 20006

_____
Timothy C. Bass