

# HARTZ

THE HARTZ MOUNTAIN CORPORATION, 400 PLAZA DRIVE, SECAUCUS, NEW JERSEY 07094

## MUTUAL CONFIDENTIALITY AGREEMENT
## BETWEEN
## THE HARTZ MOUNTAIN CORPORATION
## AND
## CHANELLE PHARMACEUTICALS MANUFACTURING LTD.

This Mutual Confidentiality Agreement (this "Agreement") dated as of January 30, 2002, by and between **Chanelle Pharmaceuticals Manufacturing Ltd.**, an Irish corporation with its principal place of business located at Dublin Road, Loughrea, Co. Galway, Ireland ("Chanelle"), and **The Hartz Mountain Corporation**, a New Jersey corporation, with its principal place of business located at 400 Plaza Drive, Secaucus, NJ 07094 ("Hartz"), as follows:

### *WITNESSETH:*

**WHEREAS**, both parties wish to engage in discussions with relating to the formulation of certain wormer products for companion animals (the "Business") and thus the possibility of entering into a transaction concerning the Business (the "Transaction");

**WHEREAS**, each of the parties (the "Disclosing Party") is willing to make certain "Information" (as hereinafter defined) concerning the Business available to the other party (the "Recipient") subject to the terms of this Agreement;

**WHEREAS**, Recipient acknowledges that certain of the Information is of a confidential, proprietary and trade secret nature to the Disclosing Party;

**NOW, THEREFORE**, in consideration of the foregoing premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the parties agree as follows:

1. "Information" shall mean any and all information relating to the Business or other business of the Disclosing Party that the Disclosing Party or any of its representatives or affiliates furnish or have furnished to the Recipient by any means including orally (provided such oral information is reduced to writing within 30 days of its disclosure and such writing is provided to the Recipient) or in writing or gathered by inspection and provided the same is specifically marked or designated as "confidential" or "proprietary" together with any and all notes, memoranda, analyses, compilations, studies or other documents (whether in hard copy or electronic media) prepared by the Recipient, its



directors, officers, partners, employees, agents or other representatives (including advisors, attorneys, accountants, financial advisors and potential financing sources) (the "Representatives") which contain or otherwise reflect such Information, together with any and all copies, extracts or other reproductions of any of the same; provided, however, that the term "Information" does not include information that:

    (a)    is or becomes generally available to the public through no wrongful act of the Recipient or its Representatives; or

    (b)    was available to the Recipient on a non-confidential basis prior to its disclosure to Recipient by Disclosing Party; or

    (c)    becomes available to the Recipient on a non-confidential basis from a source other than Disclosing Party provided that such source is not known by the Recipient to be subject to a confidentiality agreement with the Disclosing Party.

    2.    All requests for Information, facility tours or management meetings, or questions concerning procedures will first be directed to the Disclosing Party, unless otherwise specifically authorized by the Disclosing Party. The Disclosing Party will supply to the Recipient the Information as the Recipient may request that in the reasonable judgment of Disclosing Party is necessary for the purpose of the Recipient's evaluation of the possible Transaction.

    3.    For the period set forth herein, the Recipient will keep the Information strictly confidential and will disclose said Information only to such of its Representatives who need to know such Information in order to assist the Recipient in its evaluation of the possible Transaction, who are informed by the Recipient of the confidential nature of the Information and who agree to be bound by this Agreement. Otherwise, the Information, the fact that the Information was disclosed and the fact that discussions are taking place relative to a possible Transaction including the status thereof will not be disclosed by the Recipient (or its Representatives) to any person or entity (including employees of the Business except as specifically authorized by the Disclosing Party in writing) except as may be required by law or judicial process and in accordance with Section 5 hereof, without the written consent of the Disclosing Party. The Recipient shall be responsible for any breach of this Agreement by its Representatives and agrees to take all reasonable measures to prevent such Representatives from the unauthorized use or disclosure of the Information.

    4.    The Recipient will use the Information only for the purposes of its evaluation of the possible Transaction.

    5.    In the event that the Recipient or any of its Representatives receive a request or are required by applicable law to disclose all or any part of the Information to a court, arbitral panel, governmental agency or other tribunal, the Recipient will promptly notify the Disclosing Party of the request, consult with and assist Disclosing Party in seeking a



protective order or request for other appropriate remedy. In the event that such protective order or remedy is not obtained or that the Disclosing Party waives compliance with the terms hereof, the Recipient shall disclose only that portion of the Information which, in the opinion of their counsel, is legally required to be disclosed, and will exercise their respective reasonable best efforts to assure that confidential treatment will be accorded said Information by the party(ies) receiving the same. The Disclosing Party shall be provided an opportunity by the Recipient to review the Information prior to its disclosure by the Recipient to the extent permitted by law in the opinion of Recipient's counsel.

6. Upon the request of the Disclosing Party, Recipient shall (and Recipient shall cause its Representatives to) return all Information to the Disclosing Party or destroy all such Information and will certify said return or destruction in writing to the Disclosing Party. Any oral Information will continue to be subject to the terms of this Agreement.

7. No license or conveyance of any rights under any discoveries, inventions, patents, trade secrets, proprietary information, copyrights, trade names or trademarks, or applications therefore, or any other form of intellectual property is granted or implied with respect to any Information disclosed pursuant to the terms of this Agreement.

8. Nothing contained herein shall be construed as committing the parties hereto to entering into any transaction or to deal exclusively with one another.

10. No failure or delay by the Disclosing Party in exercising any right, power or privilege hereunder shall operate as a waiver hereof nor shall any single or partial exercise thereof preclude any other or further exercise hereunder.

11. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of other portions hereof, which shall remain in full force and effect.

12. This Agreement shall not be assigned by the Recipient without the prior written consent of the Disclosing Party, provided, that either party shall be permitted to assign this Agreement to any party that buys all or substantially all of its common stock or assets upon notice from such party to the other party hereto.

13. This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey, USA, without giving effect to its internal principles of conflicts of laws.

14. The term of this Agreement shall be ten (10) years from the date of its execution.

IN WITNESS WHEREOF, the parties have entered into this Agreement as of the date first above written.

3



THE HARTZ MOUNTAIN CORPORATION

By: *Michael [signature]*
Its: *vice president, R&D*
    2/22/02

CHANELLE PHARMACEUTICALS MANUFACTURING LTD

By: *[signature]*
Its: *Michael Burke, Director*
    1st. Feb. 2002.

- 4 -



# Product Registrations

- Chanelle have registration dossiers for 53 Veterinary Pharmaceutical Products.

- Over 600 Registrations in over 70 countries worldwide, including USA, Japan, Germany, France, U.K, Italy, Holland, Belgium, New Zealand, Australia and South Africa.

chanelle