**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| VIRBAC CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CASE No.: 1:05-CV-01128 (RMU) |
| v. | : | |
| | : | |
| CHANELLE PHARMACEUTICALS | : | |
| MANUFACTURING LIMITED, et al. | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF
DEFENDANT CHANELLE PHARMACEUTICALS MANUFACTURING LIMITED TO
DIMISS THE FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL
JURISDICTION, FOR IMPROPER VENUE, OR, ALTERNATIVELY, TO TRANSFER
VENUE, AND TO DISMISS COUNTS I, II, III, VI, VIII, AND IX FOR FAILURE TO
STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

      Defendant Chanelle Pharmaceuticals Manufacturing Limited ("Chanelle"), by and

through its undersigned counsel, respectfully submits the following memorandum of points and

authorities in support of its motion to dismiss the First Amended Complaint ("Amended

Complaint") of plaintiff Virbac Corporation ("Virbac") for lack of personal jurisdiction,

improper venue or, alternatively, to transfer venue, and to dismiss Counts I, II, III, VI, VIII, and

IX for failure to state a claim upon which relief can be granted.

      Respectfully submitted by counsel for defendant Chanelle Pharmaceuticals Mfg. Ltd. by:

Barry Boss, Esquire
COZEN O'CONNOR
1668 K Street, N.W.
Suite 500
Washington, DC  20006
202-912-4800  (phone)
202-912-4830 (fax)

John C. Barnoski, Esquire
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA  19103
215-665-2000 (phone)
215-665-2013 (fax)
Of Counsel/Admitted *Pro Hac Vice*

## PRELIMINARY STATEMENT

The material allegations in Virbac's Amended Complaint relate to four categories of relevant events:

(1) allegations regarding Virbac's written agreements with non-party Blue Ridge Pharmaceuticals, Inc. ("Blue Ridge"), pursuant to which Virbac allegedly acquired rights in certain process technology developed by Blue Ridge (*Amended Complaint*, at ¶¶ 15-28; 31-36);

(2) allegations regarding Blue Ridge's disclosure of such information to Chanelle, in breach of the agreements (*Amended Complaint*, at ¶¶ 29-30, 37);

(3) allegations regarding Chanelle's alleged disclosure of the process technology to defendant Hartz Mountain Corporation ("Hartz") (*Amended Complaint*, at ¶¶ 38-40); and,

(4) allegations regarding the filing of patent applications by Chanelle and Hartz that were purportedly covered, in part, the process technology sold by Blue Ridge to Virbac (*Amended Complaint*, at ¶¶ 41-52).

These allegations, even when viewed in the light most favorable to Virbac, undisputedly demonstrate that the Court lacks personal jurisdiction over Chanelle; that venue is either improper in this District, or the case should be transferred to the District of New Jersey; and, that the majority of Virbac's claims fail as a matter of law.

As a threshold matter, Virbac fails to allege facts sufficient for the Court to exercise personal jurisdiction over Chanelle, a corporation that is based in, and operates out of, Ireland. Virbac's primary basis for jurisdiction relates to certain patent applications filed by Chanelle and Hartz with the United States Patent & Trademark Office ("USPTO"). As even Virbac admits, however, the filings actually occurred at the USPTO's office in *Alexandria, Virginia* – not the District of Columbia. Regardless, the "government contacts exception" precludes the assertion of personal jurisdiction over a non-resident such as Chanelle, whose only contacts with the District of Columbia are for purposes of dealing with a federal agency, such as the USPTO.

The only remaining "contact" alleged by Virbac, which is made on information and belief, is that Chanelle sold "non-registered" products in the United States and in this District. In response, Chanelle has submitted a Declaration that not only expressly denies such allegations, but also demonstrates that Chanelle has not, and does not, transact business in this District. Accordingly, Chanelle is not subject to personal jurisdiction in the District of Columbia.

The Court should also dismiss the Amended Complaint for improper venue. None of the parties or relevant non-parties are residents of the District of Columbia, none of the agreements identified by Virbac were negotiated in, or performed in, this District, and none of the material events alleged in the Amended Complaint occurred in this District. Alternatively, the Court should transfer this case to the District of New Jersey, where Chanelle and Hartz are litigating a dispute related to a Confidential License & Supply Agreement – one of the agreements identified by Virbac in its Amended Complaint. Moreover, the "private" and "public" interest factors weigh heavily in favor of the transfer. The New Jersey District Court has personal jurisdiction over Chanelle, and much of the relevant witnesses and documentary evidence is located in that forum. Conversely, Virbac has yet to identify any relevant witness who is located in the District of Columbia, nor has it identified any interest that this District would have in adjudicating a dispute between a Texas corporation (Virbac), a New Jersey corporation (Hartz), and an Irish corporation (Chanelle).

Finally, the Court should dismiss Counts I, II, III, VI, VIII and IX of the Amended Complaint, for failure to state a claim upon which relief can be granted. These counts either are not cognizable under applicable law, or Virbac simply has failed to plead the required elements.

## RELEVANT PROCEDURAL HISTORY

Virbac filed its original Complaint with the Court, on or about June 7, 2005. On August 24, 2005, Chanelle agreed to waive formal service of process and accepted service of the Complaint, subject to a reservation of all applicable defenses. Accordingly, Chanelle's response to the original Complaint was due on or before October 24, 2005.

Although Virbac named Hartz and several of its officers and/or employees as defendants to the original Complaint, Virbac did not serve Hartz with the Complaint, prior to September 30, 2005. On that date, Hartz filed a motion to dismiss the Complaint for improper venue or, alternatively, to transfer venue to the District of New Jersey. Hartz also moved to dismiss Counts I, II and III of the Complaint, for failure to state a claim upon which relief can be granted.

Thereafter, and prior to Chanelle filing a response to the Complaint, Virbac informed Chanelle of its intent to file a First Amended Complaint and requested Chanelle's consent, which Chanelle provided. Virbac filed its Amended Complaint, on or about October 18, 2005, and the parties agreed that Chanelle would have until November 7, 2005, to file its response to the Amended Complaint.

## STATEMENT OF FACTS

### A.      The Parties and Relevant Non-Parties Identified in the Amended Complaint

None of the parties to this action, nor any of the relevant non-parties identified in the Amended Complaint, are residents of the District of Columbia. Plaintiff Virbac is a Delaware corporation, with a principal place of business at 3200 Meacham Blvd., Ft. Worth, Texas. *Amended Complaint*, at ¶1. Chanelle is a corporation organized and existing under the laws of the Country of Ireland, with a principal place of business at Dublin Road, Loughrea, County Galway, Ireland. *See* Declaration of Michael H. Burke ("*Burke Decl.*"), at ¶4, which is attached

to the Declaration of John C. Barnoski, Esq. ("*Barnoski Decl.*") as Exhibit A.  Finally, co-defendant Hartz is alleged to be a New Jersey corporation, with a principal place of business at 400 Plaza Drive, Secaucus, New Jersey.  *Amended Complaint*, at ¶3.

Virbac's Amended Complaint also focuses on its purported relationship with non-party, Blue Ridge Pharmaceuticals, Inc. ("Blue Ridge"), which Virbac alleges is a Delaware corporation based in North Carolina.  *Id.*, at ¶15.  According to Virbac, Blue Ridge was a former, wholly-owned subsidiary of IDEXX Laboratories, Inc. ("IDEXX"), and that Blue Ridge has since changed its name to IDEXX Pharmaceuticals, Inc.  *Id.*, at ¶16.

**B.    The Relationship Between Virbac and Blue Ridge**

According to the Amended Complaint, in or around 1999, Blue Ridge was developing "a series of liver-flavored veterinary products" (the "Products").  *Id.*, at ¶15.  Virbac alleges that Blue Ridge held "the recipes, processes, ingredients, and other information respecting the Products not generally known to the public in confidence, and treated them as trade secrets ("Trade Secrets")."  *Id.*, at ¶16.

On December 22, 1999, Virbac entered into a Development and Distribution Agreement ("Development Agreement") with Blue Ridge and acquired "the exclusive rights to manufacture, have manufactured, market, sell and have sold" the Products.  *Id.*, at ¶20.  In September, 2001, Virbac contends that IDEXX and Blue Ridge requested permission to disclose to Chanelle the terms of the Development Agreement, and that Blue Ridge and Virbac then entered into a letter agreement, dated September 11, 2001, which authorized Blue Ridge to do so.  *Id.*, at ¶29.  Virbac further alleges, on information and belief, that Blue Ridge subsequently disclosed the terms of the Development Agreement to Chanelle, along with a copy of the same.  *Id.*, at ¶30.

Virbac and Blue Ridge allegedly entered into a second agreement on December 13, 2001 – a Product Transfer Agreement ("PTA") – pursuant to which Blue Ridge allegedly transferred

to Virbac its "entire interest in the Products and Trade Secrets." *Id.*, at ¶31. As part of the PTA, Virbac alleges that Blue Ridge represented and warranted that 'to the best of its knowledge' it had 'not disclosed any proprietary information relating to the Products, including the Know-How and the contents of any applications for Registrations, to any person or entity . . . .' *Id.*, at ¶32. Virbac further alleges, ***on information and belief***, that Chanelle knew that Virbac entered into the PTA with Blue Ridge, and that Chanelle knew its material terms. *Id.*, at ¶34 (emphasis added).

### C.   Virbac Contends that Blue Ridge Breached Its Agreements

According to Virbac, sometime after it entered into the Development Agreement and PTA with Blue Ridge, Blue Ridge and IDEXX allegedly breached the agreements by disclosing to Chanelle the Trade Secrets associated with the Products. *Id.*, at ¶37. Although Virbac alleges that the disclosure "took place at a time and in a manner unknown to Virbac," it nevertheless alleges that the disclosure occurred after Blue Ridge had disclosed to Chanelle the terms of the Development Agreement. *Id.*

Virbac next alleges, on information and belief, that, in 2002, "Chanelle falsely represented to Hartz that it (Chanelle) owned and developed the Trade Secrets and Products," and that Chanelle conveyed "some or all of the Trade Secrets to Hartz pursuant to a 'Mutual Confidentiality Agreement,' dated as of January 22, 2002." *Id.*, at ¶38. Virbac alleges that Chanelle and Hartz then entered into a Confidential License and Supply Agreement ("CL&S Agreement"), whereby Chanelle granted Hartz the right to sell "various products," as defined in that agreement. *Id.* According to Virbac, the "various products" were actually the same products that Blue Ridge had transferred to Virbac. *Id.*, at ¶39.

Virbac alleges that Chanelle and Hartz later filed U.S. Patent Application Serial No. 10/637,807 and U.S. Patent Application Serial No. 10/800,407, on or about August 8, 2003

("Patent Applications"), which were published on or about February 10, 2005 as U.S. Patent Application Publication No. US2005/0032718 and U.S. Patent Application Publication No. US2005/0032719.[1]  *Id.*, at ¶¶41-42.  Virbac claims that the Patent Applications cover the same Products that it purchased from Blue Ridge, contain false representations concerning source, ownership, and inventorship, and are "recapitulations of significant portions of the Trade Secrets with no material inventive contribution by the claimed individual inventors."  *Id.*, at ¶44, 46.

Virbac alleges that the patent examiner at the USPTO has issued an "office action" and a "final office action," rejecting the Patent Applications.  *Id.*, at ¶ 47.  According to Virbac, if the Patent Applications are not placed in condition for allowance, and another application that claims priority to the Patent Applications is not filed by the due date for responding to the "final office action," the Patent Applications will go abandoned.  *Id.*

### D.    The New Jersey Action

Currently pending in the District Court for the District of New Jersey, Newark vicinage, is an action between Hartz and Chanelle captioned, *The Hartz Mountain Corporation v. Chanelle Pharmaceuticals Manufacturing Limited*, No. 05-2488 (William J. Martini, U.S.D.J.) (the "New Jersey Action").  A copy of the Complaint from the New Jersey Action is attached to the *Barnoski Decl.*, as Exhibit B.  As set forth in the Complaint, the New Jersey Action involves claims by Hartz against Chanelle related to the CL&S Agreement and the parties' performance thereunder.

Chanelle filed its Answer in the New Jersey Action on October 19, 2005.  A true and correct copy of the Answer is attached to the *Barnoski Decl.*, as Exhibit C.  A Rule 16

---

[1] Virbac also alleges that defendants filed International Patent Applications with the EPO, on or about August 3, 2004, that Chanelle and Hartz were listed as the assignees of record on such applications, and that the PCT Applications were published on or about February 24, 2005. *Amended Complaint*, at ¶43.

Conference is scheduled in the matter on November 9, 2005, before the Honorable Ronald J. Hedges, U.S.M.J.  *See Barnoski Decl.*, Exhibit D (handwritten notation by Judge Hedges at the bottom of the Stipulation, scheduling the Rule 16 Conference).

## ARGUMENT

### I.    THE COURT LACKS PERSONAL JURISDICTION OVER CHANELLE.

Virbac has the burden of establishing a factual basis for the exercise of personal jurisdiction over Chanelle. *Cellutech, Inc. v. Centennial Cellular Corp.*, 871 F. Supp. 46, 48 (D.D.C. 1994) (citations omitted).  "In attempting to satisfy this burden, plaintiffs may not rest on bare allegations or conclusory statements alone and must make at least a *prima facie* factual showing." *Freiman v. Lazur,* 925 F. Supp. 14, 21 (D.D.C. 1996).

The Amended Complaint contains no allegation that Chanelle resides in, is incorporated in, or maintains a principal place of business in this District.  *See Amended Complaint*, at ¶¶2, 7. Accordingly, the Court lacks general jurisdiction over Chanelle, and "the only conceivable bases for the Court's exercise of personal jurisdiction . . . are those enumerated in the District of Columbia 'long-arm' statute, 4 D.C.Code Ann. §13-423 . . .."  *Nat'l Coal Assoc. v. Clark*, 603 F. Supp. 668, 671 (D.D.C. 1984) (citations omitted).

Virbac contends that the Court has personal jurisdiction over Chanelle pursuant to the "transacting business" section of the long-arm statute.  *See Amended Complaint*, at ¶7.  The section provides, in pertinent part:  "a District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's . . . transacting any business in the District of Columbia."  *D.C. Code § 13-423(a)(1)* (2001).  Virbac contends that Chanelle transacted business in this District in two respects.

First, it alleges that Chanelle published or disseminated Virbac's alleged "trade secret" information when it filed the Patent Applications with the USPTO. *Amended Complaint*, at ¶5. Such filings, however, are precluded from the Court's consideration by application of the "government contacts exception."

Second, Virbac alleges that Chanelle "sells non-registered products in the United States including, ***Virbac is informed and believes***, in the District of Columbia." *Id.*, at ¶7 (emphasis added). As demonstrated by the Declaration of Michael H. Burke, Chanelle's Managing Director, this allegation is simply false.

### A.    The Filing of the Patent Applications by Chanelle is Insufficient to Establish Personal Jurisdiction in the District of Columbia.

As Virbac acknowledges in its Amended Complaint, Chanelle filed its Patent Application with the USPTO's office in Alexandria, Virginia – not the District of Columbia. *See Amended Complaint*, at ¶11 ("The Patent and Trademark Office is physically situated in Alexandria, Virginia."). Thus, Chanelle's filing of the Patent Applications did not constitute a "contact" with the District of Columbia, for purposes of personal jurisdiction.

In an attempt to cure this jurisdictional defect, Virbac further alleges that "[t]he agencies with which Defendants have filed such fraudulent disclosures and other filings are agencies of the U.S. Department of Commerce (in the case of the Patent and Trademark Office) and the U.S. Department of Health and Human Services (in the case of the [FDA]), both of which are headquartered in this District." *Amended Complaint*, at ¶5. Even assuming that Chanelle's contact with the USPTO in Virginia could be applied to the USPTO's "parent" agency (the Department of Commerce) in the District of Columbia , under the "government contacts" exception, such contacts alone do not establish personal jurisdiction.

The "government contacts" exception "precludes the assertion of personal jurisdiction over a non-resident whose only contacts with the District of Columbia are for purposes of

dealing with a federal agency or Congress." *Dooley v. United Technologies Corp.*, 803 F. Supp. 428, 434 (D.D.C. 1992). *See also*, *Rose v. Silver,* 394 A.2d 1368, 1370 (D.C. 1978), *reh'g denied*, 398 A.2d 787 (D.C. 1979) ("[M]ere entry [into the District of Columbia] by non-residents for the purpose of contacting federal government agencies cannot serve as the basis for *in personam* jurisdiction."). Indeed, "[t]o allow a defendant's contact with a federal instrumentality to serve as a contact for personal jurisdiction analysis 'would threaten to convert the District of Columbia into a national judicial forum.'" *Freiman,* 925 F. Supp. at 24 (quoting *Environmental Research Int'l, Inc. v. Lockwood Greene Engineers, Inc*., 355 A.2d 808, 813 (D.C. 1976)).

 Applying this principle, this District Court has held that an alleged infringer's registration of a copyright, at the Copyright Office **in Washington, D.C.**, did not constitute "transacting business" in the District of Columbia, for purposes of establishing personal jurisdiction under the long-arm statute. *See Freiman,* 925 F. Supp. at 24. Similarly, this District Court has held that filings with the Securities Exchange Commission ("SEC") and an application for membership in the National Association of Securities Dealers were subject to the exception. *See Investment Co. Institute v. United States*, 550 F. Supp. 1213, 1217 (D.D.C. 1982). *See also Cellutech,* 871 F. Supp. at 51 (observing that, pursuant to the government contacts exception, the defendant's filings with the Federal Communications Commission and the SEC, **in the District of Columbia**, did not, standing alone, establish personal jurisdiction).

 Accordingly, the filing of the Patent Applications by Chanelle should not be considered by the Court in determining whether Chanelle is subject to personal jurisdiction in this District.

### B.     Chanelle Does Not Sell "Non-registered" Products in the District of Columbia.

 The only other allegation by Virbac, regarding business allegedly transacted by Chanelle in the District of Columbia, is that "Chanelle also sells non-registered products in the United

States including, Virbac is informed and believes, in the District of Columbia." *Amended Complaint*, at ¶7.  In fact, Chanelle does not sell, and has never sold, non-registered products in the United States or the District of Columbia.  *See Burke Decl.*, at ¶9.  Moreover, Chanelle has never received income from sales generated in the District of Columbia, and does not own, operate or maintain a manufacturing facility, office, or any other business, in the District of Columbia.  *Id.*, at ¶10.

Similarly, Chanelle has never owned real or personal property or maintained bank accounts or lines of credit in the District of Columbia, it is not registered to do business in the District of Columbia, and it does not have a registered agent in the District of Columbia.  *Id.*, at ¶¶ 11-12.  Finally, Chanelle does not conduct any targeted marketing or advertising in the District of Columbia.  *Id.*, at ¶13.

Contrary to Virbac's unsupported allegations, Chanelle has not transacted business in the District of Columbia.  Accordingly, the Court does not have personal jurisdiction over Chanelle pursuant to the DC long-arm statute.

## II.    VENUE IS IMPROPER IN THIS DISTRICT BECAUSE NONE OF THE ALLEGATIONS IN THE AMENDED COMPLAINT HAVE ANY CONNECTION TO THIS DISTRICT.[2]

### A.    The Amended Complaint Should Be Dismissed For Improper Venue.

When jurisdiction is based on a federal question, as is alleged by Virbac, 28 U.S.C. § 1391(b) provides that venue is proper in:

> (1) a judicial district where any defendant resides, if all the defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim

---

[2] Chanelle expressly joins in the legal arguments articulated by Hartz in its motion to dismiss the Amended Complaint for improper venue, or, alternatively to transfer venue, and to dismiss Counts I, II and III.  Although Chanelle joins in Hartz's legal arguments, it does not join in those "facts" cited by Hartz which are in dispute between Hartz and Chanelle in the New Jersey Action.

> occurred, or a substantial part of property that is the subject of the
> action is situated, or (3) a judicial district in which any defendant is
> subject to personal jurisdiction at the time the action is
> commenced, if there is no district in which the action may
> otherwise be brought.

28 U.S.C. § 1391(b).  With respect to Chanelle, Virbac erroneously alleges four bases to support

venue in this District.

First, Virbac contends that Chanelle, as an "alien" corporation, may be sued in this

District pursuant to 28 U.S.C. § 1391(d).  *Amended Complaint,* at ¶ 8.  That provision, however,

does not mean that an alien corporation may be sued in a District with which it has no contacts or

connection.  *See generally, Burke Decl.*  Indeed, if the Court does not have personal jurisdiction

over Chanelle, as demonstrated herein, venue cannot be appropriate in this District, regardless of

the application of 28 U.S.C. § 1391(d).

Second, Virbac contends that venue is proper pursuant to 28 U.S.C. § 1391(b)(2), in that

a substantial part of the events or omissions giving rise to its claims, occurred in this District.

*Amended Complaint,* at ¶ 9.  This statement simply is not true and is not supported by any

allegation in the Amended Complaint.  None of the parties are residents of this District (nor are

any of the relevant non-parties), the Patent Applications were not filed in this District, and none

of the agreements identified by Virbac were negotiated in, or performed in, this District.  Thus,

contrary to Virbac's contention, ***no event or omission***, which purportedly gives rise to Virbac's

claims, occurred in this District.

Third, Virbac contends that venue is proper in this District under 28 U.S.C. § 1391(b)(3),

in that there is no other district in which venue is otherwise proper.  *Amended Complaint,* at ¶ 11.

On the contrary, venue would be proper in the District of New Jersey, where Chanelle and Hartz

are already litigating a dispute related to the CL&S Agreement – one of the agreements

identified by Virbac in the Amended Complaint.[3]

---

[3] As the Court is aware, co-defendant Hartz has also moved to dismiss for improper venue or,
alternatively, to transfer this matter to the District of New Jersey.  It should be noted that in

Finally, Virbac contends that venue is proper with regard to Chanelle under 35 U.S.C. § 293, which applies to "[e]very **patentee** not residing in the United States." *Amended Complaint*, at ¶ 12 (emphasis added). Chanelle, however, is not a patentee, such that the statute does not apply. Indeed, even Virbac acknowledges that a patent has yet to issue to Chanelle or Hartz. *See id.*, at ¶ 47.

"To prevail on a motion to dismiss for improper venue, the defendant must present facts that will defeat the plaintiff's assertion of venue." *Abramoff v. Shake Consulting, L.L.C.*, 288 F. Supp.2d 1, 3 (D.D.C. 2003). Here, not only has Chanelle satisfied its burden by submitting a Declaration that demonstrates that it has no connection to, or contacts with, this District, but the overwhelming lack of allegations by Virbac supporting venue is this District, warrants dismissal of the case for improper venue.

### B. If the Court Does Not Dismiss the Case for Improper Venue, the Court Should Transfer This Matter To The District of New Jersey.

As an alternative to dismissing the Amended Complaint in its entirety, the Court should transfer this case to the District of New Jersey, pursuant to 28 U.S.C. § 1404(b) and § 1406(a). The D.C. Circuit favors transfer 'when procedural obstacles [such as lack of personal jurisdiction, improper venue, and statute-of-limitation bars] impede an expeditious and orderly adjudication on the merits.' *Crenshaw v. Antokol,* 287 F. Supp.2d 37, 42 (D.D.C. 2003). "To transfer the action, the court must ensure as a preliminary matter that venue is proper and that the defendants are subject to personal jurisdiction in the transferee forum." *Crenshaw,* 287 F.

---

response to Hartz's motion, Virbac offered no legitimate argument that New Jersey was not a proper venue, nor any argument that the District of Columbia was a more convenient or appropriate venue than the District Court in New Jersey. Virbac suggests, however, that the New Jersey District Court may have a backlog of cases, as compared to this Court, despite the fact that Virbac filed its complaint well over five months ago; the defendants, not Virbac, took the active steps to move this matter forward by filing a motion to dismiss prior to service of the complaint in the case of Hartz and requesting Rule 4(d) wavier forms in the case of Chanelle.

Supp.2d at 42.  Here, Chanelle and Hartz are already litigating a case in the District of New

Jersey, such that both entities are subject to jurisdiction in that District.

In considering whether to transfer a case, courts also consider a number of private and

public interest factors, which must ultimately weigh in favor of the transfer.  *Schmidt v.*

*American Institute of Physics,* 322 F. Supp.2d 28, 31-32 (D.D.C. 2004).  The "private interest"

considerations include:

(1)     plaintiff's choice of forum, unless the balance of convenience is strongly in
defendant's favor;

(2)     defendant's choice of forum;

(3)     whether the claim arose elsewhere;

(4)     the convenience of the parties;

(5)     the convenience of the witnesses, but only to the extent that a witness would be
unavailable for trial in one of the jurisdictions; and

(6)     the ease of access to the sources of proof.

*Schmidt,* 322 F. Supp.2d at 31-32.  The public interest considerations include (1) the transferee

District's familiarity with the governing laws; (2) the relative congestion of the two courts'

calendars; and (3) the local interest in deciding local controversies at home.  322 F. Supp.2d at

32.

Both the private and public interest factors weigh heavily in favor of the transfer of this

case to the District of New Jersey.  With respect to the private factors, Virbac's choice of forum

should be given little weight, as its claims have a tenuous connection to this District, at best.

Indeed, none of the transactions or agreements at issue occurred in the District of Columbia, and

no allegation in the Amended Complaint suggests that there are witnesses or other sources of

proof located in this District.  In contrast, Hartz's witnesses and sources of proof are located in

the District of New Jersey, and one of the key agreements identified by Virbac in its Amended

Complaint – the CL&S Agreement – was negotiated, at least in part, in New Jersey. Moreover, that forum will be more convenient for both Chanelle and Hartz, as they are already litigating an action in that District, and there is no reason that New Jersey would be more or less of a convenient forum for Virbac.

With regard to the private interest factors, Virbac cannot legitimately argue that the District of New Jersey is unfamiliar with the claims asserted in its Amended Complaint; indeed, there is nothing novel about any of its claims that would suggest that this District is more or less familiar with the claims than the District of New Jersey. In addition, although Virbac has suggested that this Court's docket is less "congested" than the docket of the District of New Jersey, there can be no local interest in having Virbac's claims litigated in the current forum. Neither Virbac, nor any of the other parties, are residents of this District, none of the material events occurred in this District, and it is clear, even though Virbac attempts to plead in the alternative, that if it suffered damages anywhere, such damages were not suffered or incurred in this District. On the other hand, Hartz is a New Jersey corporation, and Hartz and Chanelle are already litigating a dispute in that forum. Accordingly, if Virbac has claims against Chanelle or Hartz, they should be litigated in the District of New Jersey.

## III.    THE COURT SHOULD DISMISS COUNTS I, II, III, IV, VI, VIII, AND IX FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

"On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), [the] Court must construe the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Islamic American Relief Agency v. Unidentified FBI Agents,* 2005 WL 2386028, *4 (D.D.C. Sept. 15, 2005). The Court, however, need not accept asserted inferences or conclusory allegations that are not supported by the facts alleged in the Complaint. *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994).

Pursuant to this standard, the Court should dismiss Counts I, II, III, VI, VIII, and IX of the

Amended Complaint, for failure to state a claim upon which relief can be granted.

### A.      Counts I and II Fail to State Claims For a Violation of the Lanham Act.

In Counts I and II of the Amended Complaint, Virbac attempts unsuccessfully to allege a

violation of § 43 of the Lanham Act for false designation of origin and for false advertising.

Virbac's claims are not based on any "good" or "service."  Rather, the claims are based on the

Patent Applications, which cannot form the basis for a Lanham Act violation.

Section 43 of the Lanham Act provides a private civil right of action to:

> Any person who, on or in connection with any goods or services,
> or any container for goods, uses in commerce any word, term,
> name, symbol, or device, or any combination thereof, or any false
> designation of origin, false or misleading description of fact, or
> false or misleading representation of fact, which --
>
> (A)  Is likely to cause confusion, or to cause mistake, or to deceive
> as to the affiliation, connection, or association of such person with
> another person, or as to the origin, sponsorship, or approval of his
> or her goods, services, or commercial activities by another person,
> or
>
> (B)  In commercial advertising or promotion, misrepresents the
> nature, characteristics, qualities, or geographic origin of his or her
> or another person's goods, services, or commercial activities . . . .

15 U.S.C. § 1125(a)(1).

### 1.      The Amended Complaint Fails to State a False Designation Claim Under the Lanham Act.

Count I of the Amended Complaint is essentially a "false designation" claim.  In this

regard, Virbac alleges that "Defendants made false designations of origin, false or misleading

descriptions of fact, and false or misleading representations of fact as to the affiliation,

connection, and association of Virbac's products, falsely and fraudulently claiming that the

Products belonged to them and that they invented them and owned the inventions."  *Amended

Complaint,* at ¶ 52.  As recognized by Hartz in its motion to dismiss, the United States Supreme

Court has already rejected the application of the Lanham Act with respect to representations as to the ownership of an idea or process. *See Hartz Memorandum,* at 19-20 (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 37 (2003)). In *Dastar,* the Supreme Court interpreted the phrase "origin of goods" in the Lanham Act to refer to "the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Dastar,* 539 U.S. at 37. Thus, under *Dastar,* the Patent Applications cannot form the basis for a Lanham Act violation.[4]

Moreover, patentable rights in a claimed invention, or the technology underlying the invention, is not a good or service under the Lanham Act. *See Pro-Mold and Tool Company, Inc. v. Great Lakes Plastics, Inc.,* 75 F.3d 1568, 1674 (Fed. Cir. 1996). Thus, even assuming that a patent had issued to Chanelle, the patent itself could not serve as the basis for a Lanham Act violation.

Count I also fails as a matter of law because the Amended Complaint contains no allegation that consumers have been confused about the **origin** of any products sold by Chanelle. *See Amended Complaint,* at ¶¶ 51-54. Indeed, there can be no such allegation because Chanelle has never sold any product that was manufactured pursuant to the process technology contained in the Patent Applications. Similarly, Count I should be dismissed because Virbac has not alleged that Virbac actually manufactured or sold any of the Products. *See generally, Amended Complaint.* Thus, even assuming that Chanelle had sold products (which it has not), there could be no confusion with any of Virbac's products.

---

[4] In an analogous situation, where a plaintiff asserted Lanham Act claims arising from the defendants' alleged misrepresentations regarding defendants' rights and patents, the Southern District of New York rejected the claims as arising under the Lanham Act. *See Digigan, Inc. v. Invalidate, Inc.,* 2004 WL 203010 *4-5, (S.D.N.Y. 2004) (holding that misrepresentations concerning a patent are not actionable because a patent is not a good or service, as those terms are used in the Lanham Act).

    **2.**    **The Amended Complaint Fails to State a False Advertising Claim Under the Lanham Act.**

Count II of the Amended Complaint, which attempts to allege a Lanham Act claim for "false advertising," suffers from the same pleading deficiencies as Count I. To state a claim for false advertising under the Lanham Act, Virbac must allege that Chanelle circulated specific advertisements or marketing materials to the general public. Virbac makes no such allegation. In fact, it cannot do so because Chanelle has not engaged in any such advertising or marketing activities. *See Burke Decl.*, at ¶ 13. Thus, Count II fails to state a claim and should be dismissed.

Count II also fails in that the advertising and promotion must be sufficiently public or directed to the consuming public at large. *See, e.g., Lucent Info. Mgmt. v. Lucent Techs., Inc.,* 186 F.3d 311 (3d Cir. 1999), *cert. den.* 528 U.S. 1106 (2000). The only allegation by Virbac is that Chanelle engaged in commercial advertising through its discussions with Hartz, which eventually led to a business relationship between the two companies. Even if true, such allegations do not qualify as commercial advertising and promotion that is "sufficiently disseminated to the relevant purchasing public." *See Nevyas v. Morgan,* 309 F. Supp.2d 673 (E.D. Pa. 2004); *P&G Co. v. Haugen,* 222 F.3d 1262 (10th Cir. 2000). Accordingly, Count II should be dismissed.

**B.**    **Virbac Cannot State a Claim Against Chanelle For Violation of Section 2 of the Sherman Act.**

Although styled as a "fraud on the USPTO" claim in its original Complaint, Virbac is now attempting to state a claim in Count III for violation of Section 2 of the Sherman Act. Simply put, this claim must be dismissed because no patent has yet to issue to Chanelle.

Section 2 prohibits any "attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several states, or with foreign nations[.]" 15 U.S.C. § 2. As articulated by Hartz in its motion to dismiss, in order

for a "fraud on the USPTO claim" to constitute a violation of Section 2 of the Sherman Act, Virbac must allege all of the elements of each claim. Thus, Virbac must plead that (1) Chanelle is the owner of an issued patent; (2) that the patent issued because Chanelle defrauded the USPTO; (3) that Chanelle has sought to enforce the patent against Virbac; (4) that Chanelle's enforcement of the patent threatened to lessen competition is a relevant antitrust market; (5) that Virbac suffered antitrust damages; and (6) that all other elements of attempted monopolization are met. *See Unitherm Food System, Inc. and Jennie-O Foods, Inc. v. Swift-Eckrich, Inc.,* 375 F.3d 1341, 1355 (Fed. Cir. 2004) (citing *Walker, Inc. v. Food Machinery,* 382 U.S. 172 (1965)).

As a threshold matter, Virbac has not, and cannot, allege that Chanelle is the owner of the patents at issue. Thus, the Court need not even consider whether Virbac has pled the remaining five elements of a Sherman Act claim, and should dismiss Count III.

### C.     Virbac Has Not Stated a Claim for Conversion Under Texas Law.

To state a claim for conversion under Texas law, Virbac must allege that it "owned, had legal possession of, or was entitled to possession of [certain] property; (2) [Chanelle] assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with [Virbac's] rights; (3) [Virbac] made a demand for the property; and (4) [Chanelle] refused to return the property." *French v. Moore*, 169 S.W.3d 1, 13 (Tx. Ct. App. 2004) (citation omitted). Thus, "[a] plaintiff is required to demand return of the property if the defendant legally obtained possession." *French*, 169 S.W.3d at 13 (citation omitted).

Here, even assuming that Chanelle actually exercised dominion and control over the claimed technology comprising the intangible property belonging to Virbac, there is no allegation that Virbac demanded that Chanelle return the property, or that Chanelle subsequently refused Virbac's demand. *See Amended Complaint*, at ¶¶ 72-76. Accordingly, Virbac has not

stated a claim against Chanelle for conversion, such that Count VI of the Amended Complaint should be dismissed.

**D.    Virbac's Claim for Tortious Interference with Prospective Economic Advantage or Prospective Business Relations Must be Dismissed Because Virbac has Failed to Identify any such prospective economic advantage or business relation.**

To state a claim for tortious interference with prospective business relationships, Virbac must, at a minimum, identify the prospective relationship. *See, e.g., Baty v. Protech Ins. Agency*, 63 S.W.3d 841, 860 (Tx. App. Ct. 2001). Virbac simply has not done so. Instead, Virbac merely alleges that it has been deprived "of the benefit of the reasonably anticipated advantageous business relations and contracts." *Amended Complaint*, at ¶ 85. However, until Virbac identifies an actual, prospective business relationship with which Chanelle allegedly interfered, it cannot state a claim against Chanelle for tortious interference with that relationship. Count VIII should therefore be dismissed.

**E.    Virbac's Conspiracy Claim Must be Dismissed Because It Has Not Alleged Any Specific Intent by Chanelle and Hartz to Injure It.**

Virbac has not stated a claim under Texas law for civil conspiracy. Under Texas law, "the elements of civil conspiracy are (1) a combination of two or more persons; (2) an object to be accomplished (an unlawful purpose or a lawful purpose by unlawful means); (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Greenberg Traurig of New York, P.C. v. Moody*, 161 S.W.3d 56, 80 (Tx. Ct. App. 2005). Moreover, there must be a "specific intent" to accomplish the unlawful purpose or to accomplish a lawful purpose by unlawful means. *Greenberg Traurig*, 161 S.W.3d at 80.

Virbac's Amended Complaint does not allege that Chanelle and Hartz had a "meeting of the minds" on any course of action with respect to Virbac, nor does Virbac allege any specific intent on the part of Chanelle and Hartz to injure or cause harm to Virbac. *See Amended Complaint*, at ¶¶ 86-87. In other words, there is no allegation that Chanelle and Hartz actually

agreed to engage in a course of conduct specifically to harm Virbac.  Without such an allegation, Virbac's conspiracy claim fails as a matter of law, and Count IX should be dismissed.

## <u>CONCLUSION</u>

Based on the foregoing reasons, Virbac's Amended Complaint should be dismissed for lack of personal jurisdiction and/or improper venue.  In addition, Virbac's claims for false designation of origin under §43(a)(i)(A) of the Lanham Act, false advertising under §43(a)(1)(B) of the Lanham Act, Sherman Act anti-trust violations, conversion, tortuous interference with prospective business economic advantage, and conspiracy, should also be dismissed.  Proposed orders are attached for the Court's consideration.

Respectfully submitted,


<u>/s/ L. Barrett Boss</u>
L. BARRETT BOSS
Bar Number 398100
Cozen O'Connor
1667 K Street, N.W., Suite 500
Washington, DC  20006
(202) 912-4800 – Telephone
(202) 912-4830 – Facsimile

Attorneys for Defendants
Chanelle Pharmaceuticals
Manufacturing Limited

Dated:  November 7, 2005